[L. A. No. 18749. In Bank. Dec. 23, 1943.]

ELMER JORDAN, Respondent, v. PAUL GUERRA, Appellant.

W. H. Stammer and Galen McKnight for Appellant.

L. M. Linneman and Rae B. Carter for Respondent.

SHENK, J.—The plaintiff sued for damages for the alleged wrongful death of his fourteen months old son who was run over by an automobile driven by the defendant. The defendant answered, denying the allegations of negligence, alleging contributory negligence of the mother, and pleading releases executed by the plaintiff. The plaintiff did not file an affidavit denying the genuineness and due execution of the pleaded instruments and the only issue in respect thereto was the question of their invalidity by reason of fraud. Pursuant to section 597 of the Code of Civil Procedure, and the motion of the defendant, the issues raised by the defense pleading the releases were first tried. Those issues were submitted to a jury which returned a verdict for the plaintiff. Judgment was entered declaring the releases ineffective as a bar to the action. The trial then proceeded before a different jury on the issues of negligence and contributory negligence. That jury returned a verdict for the plaintiff in the sum of

$1,000, and judgment was entered accordingly. On each trial the defendant moved for a directed verdict and for judgment notwithstanding the verdict, and each of the motions was denied. He has appealed from the judgments and from the orders denying his motions for judgment notwithstanding the verdict.

If it appear on these appeals that the trial court should have directed judgment for the defendant notwithstanding the verdicts, then this court may order judgment to be so entered. (Sec. 629, Code Civ. Proc.; *Barthelmess* v. *Cavalier*, 2 Cal.App.2d 477 [38 P.2d 484].) Such an order may be made only when it appears that a motion for a directed verdict should have been granted. (Sec. 629, Code Civ. Proc.; *Estate of Yale,* 214 Cal. 115, 123 [4 P.2d 153]; *Estate of Fleming,* 199 Cal. 750, 753 [251 P. 637].)

The evidence favorable to the plaintiff on the questioned validity of the releases is the following: Paul Guerra, the defendant, owned a ranch near Dos Palos in Fresno County on which he had a cotton patch. At the times hereinafter mentioned cotton pickers were engaged in harvesting the crop. They had been employed by a neighbor, acting as agent for Guerra. The plaintiff and his wife, Thelma Jordan, were the parents of four children, the eldest seven years of age, two were three and four and one-half years respectively, and the youngest, Murvian Leroy, was fourteen months. On Friday, November 15, 1940, Mrs. Jordan drove to the defendant's place where she had been employed in picking cotton during the previous days in that week. She took with her the three younger children. With Mrs. Guerra's permission, previously obtained, she parked her car in the graveled driveway near some eucalyptus trees to take advantage of the shade. The two older children played in a graveled yard beyond the driveway, and Murvian Leroy was left in the car during the morning while Mrs. Jordan worked in the cotton patch. After the lunch hour and about 1:30 o'clock, because of the heat, Mrs. Jordan placed the child in a sitting position against one of the eucalyptus trees. She had one more row of cotton to pick, which would take from thirty to forty minutes. The child could not walk, although he was able to creep. Mrs. Jordan observed the sharp gravel of the driveway and concluded the baby would not creep on it, at least before she would return.

The defendant Guerra had left for his employment elsewhere about 7 a. m. of that day, and as usual returned at 2 o'clock in the afternoon. He drove slowly up the driveway, passed Mrs. Jordan's car, and angled in front of it toward the row of eucalyptus trees. He came to a stop about six feet from the tree where Mrs. Jordan had placed Murvian Leroy. When he stepped down and walked around to the front of his car he saw the child caught between the right front wheel and the bumper of his car. The child had died from the impact. There was no other witness present at the time of the accident.

About 10:30 o'clock on the following morning, while the plaintiff and his father were at the funeral parlors in Dos Palos making arrangements for the child's burial, the plaintiff received a telephonic summons to go to the Guerra home. He went there accompanied by his father. On arrival they saw Mr. and Mrs. Guerra and a Mr. Goodwin who was an adjuster for Guerra's public liability insurance carrier, although that fact was not disclosed to them. Mr. Goodwin stated that Mr. Guerra was not capable of taking care of his own business and he was there to talk to Jordan on Guerra's behalf; that Guerra wanted to help toward the funeral expenses. Goodwin inquired how much the funeral would cost. The plaintiff replied, "Around seventy-five or eighty-five dollars." Goodwin remarked that the accident was unavoidable. The plaintiff expressed the opinion that the accident could have been avoided, but that he realized Mr. Guerra did not run over the child intentionally. Goodwin pointed out that Guerra had a perfect right to be on his own premises and asked how much plaintiff thought he would be out. The plaintiff said he was also out some "time," and indicated that ninety or a hundred dollars would cover the items. "And he [Goodwin] told me if I got over $85 I would be getting in dangerous territory." The plaintiff's father interjected that they did not come prepared to talk to any attorney. Goodwin disclaimed being an attorney; he said he was down just on behalf of Mr. Guerra. The plaintiff then told him he thought he would be out around $100. But Goodwin said he would "do better than that. I will give you $150." He told them that that sum was all that the plaintiff could get and was more than anyone else ever received that he knew of. He then prepared two papers for the plaintiff's signature.

One, which Goodwin wrote by his own hand, narrated the event of the accident, and continued: "As a result of the death of my child I incurred funeral bills of approximately $80.00, and some loss of time from work. I realize that Mr. Guerra did not intentionally run over my child and that it was an accident. Therefore in view of such circumstances I accept the sum of $150.00 as a compromise payment for settlement of any claim I might have as a result of this accident. I understand that in accepting this payment that this is all I can get, and that I voluntarily take such sum and thereby release Mr. Guerra from all liability resulting from this accident. I have read and understand the two pages and they are true." The last sentence was written by Jordan in his own hand at Goodwin's dictation. The second paper was a printed form of general release which was filled in by Mr. Goodwin, except that a sentence, "I have read and understand this release," was written by the plaintiff at the request of Goodwin. After signing the papers, the plaintiff was handed a draft on Farmers Automobile Inter-Insurance Exchange signed by Goodwin for $150 payable at a bank in Los Angeles. The draft purported to be in settlement of all claims arising out of the accident on November 15, 1940. On the reverse side, preceding the place for endorsements, was a printed statement that endorsement constituted a release of all claims of the endorser against the insurance company on account of the accident referred to on the face of the instrument.

It was then almost noon on Saturday. Goodwin suggested that the plaintiff and he meet in Dos Palos where the draft would be cashed. They met at the defendant's place of business where the plaintiff endorsed and delivered the draft and received $150 in cash from the defendant's brother.

At the time of the settlement the plaintiff had no money or property, with the exception of some change on his person and $50 in wages due him for fifteen days' labor. No explanation was made by Goodwin to the plaintiff of his rights or of the effect of the instruments he was signing, except that it was a final settlement. The plaintiff was twenty-nine years of age. He had had a seventh grade education and could read and write. He testified that he understood that the settlement was final, that he was satisfied with it, but that he did not know he had a right to anything except the items of

funeral expenses and time lost, which were the only subjects of discussion, and that he thought those were all that the releases covered.

One month later attorneys for the plaintiff sent a notice of rescission to the insurance company which was not accompanied by a return of the $150. Subsequently the plaintiff commenced this action for general and special damages. During the trial the court granted the plaintiff's motion to strike any claim for recovery of special damages, and the plaintiff's alleged cause of action was thus confined to recovery for general damages.

The defendant contends that the record is devoid of substantial evidence to support the jury's implied finding of fraud as a basis for the judgment that the releases were invalid; that in any event no rescission had been effected with a return or tender of return of consideration paid.

█ The judgment on this phase of the case is supported by the decision in *Meyer* v. *Haas*, 126 Cal. 560 [58 P. 1042], and similar cases, wherein it was held that such a release because of the deception practiced upon the claimant must be construed as a settlement of those matters only as to which the minds of the parties met, and may not be considered to be in satisfaction of anything not consented to by the plaintiff. In the cited case the plaintiff fell into an unguarded elevator shaft maintained by the defendants. He signed a receipt for $25 which he thought covered loss of time only but which was worded to include also claims of every kind and description.

█ The defendant seeks to distinguish the Meyer case because it involved a foreigner who could read and write English only imperfectly, and because the adjuster, who was also the injured man's physician and his agent in the settlement, occupied a place of trust and confidence toward him. We cannot say that the rule must be confined to cases where the plaintiff could not read or was prevented by the defendant from reading the release, or was mentally incompetent to comprehend the meaning of its language, regardless of any other device or deception employed to mislead him. █ In any case it is for the trier of the facts to determine what the plaintiff understood was covered by the writing and whether his understanding different from the writing was induced by the defendant. █ If a misconception be found and that the defendant was responsible therefor, the contract insofar as it pur-

ports to release claims other than those understood by the plaintiff to be included, is ineffective to that extent, and rescission and tender as to the excluded items are unnecessary. The application of the rule of the Meyer case was recognized in *Garcia* v. *California Truck Co.*, 183 Cal. 767, 770 [192 P. 708]. (See, also, *Raynale* v. *Yellow Cab Co.*, 115 Cal. App. 90 [300 P. 991]; *Wetzstein* v. *Thomasson*, 34 Cal.App.2d 554 [93 P.2d 1028].) In the Raynale case the distinction was made between cases of contracts of known content voidable because induced by fraud, and cases of no contract beyond the boundaries of mutual intent, citing the Meyer and other cases. In *Carr* v. *Sacramento Clay Products Co.*, 35 Cal. App. 439, 447 [179 P. 446], it was said: ''It is true that the law does not discourage settlements of controversies by agreement, and is disposed as far as possible to uphold them, but it is equally ready to relieve parties from fraud and imposition through which they have been induced to barter away their rights.'' It was held that in cases affording opportunity for overreaching, ''the law demands good faith on the part of the releasee and a full understanding on the part of the person injured as to his legal rights.'' (See, also, *Backus* v. *Sessions*, 17 Cal.2d 380 [110 P.2d 51]; *O'Meara* v. *Haiden*, 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381]; *Rued* v. *Cooper*, 119 Cal. 463 [51 P. 704].)

 It is the province of the jury to determine whether the circumstances furnished the opportunity for overreaching, whether the defendant or his agent took advantage of it, and whether the plaintiff was thereby misled. In reviewing the case the evidence must be regarded in the light most favorable to the jury's conclusion. Regarded in that light it cannot be said that here there is no evidence of sufficient substantiality to support the verdict. The jury was justified in concluding that the adjuster sped to Dos Palos on the morning following the death of the child and on his arrival summoned the plaintiff from the funeral parlor in order to effect a settlement before the plaintiff could have an opportunity to secure independent advice. It was also justified in finding that the settlement purported to be covered by the language of the releases was inadequate; that Goodwin, in order to secure such a settlement for his employer, the insurance carrier, led the plaintiff into the belief that he was acting solely on behalf of Guerra, who could not act for himself because of his participation in the accident but desired to help out on

the funeral expenses. (See Restatement: Restitution, sec. 8, p. 32 et seq.; California Annotations pp. 11-12.) The jury could also find that the subject of general liability was not discussed and that Goodwin's purpose in telling the plaintiff that Guerra had a right to be on his own premises was to mislead the plaintiff into believing that he had no claim except for the items of funeral expenses and time lost; and that those were the only items within the mutual understanding of the parties and covered by the releases.

In cases of this kind it has been said that the facts will be carefully scrutinized to discover whether the defendant has dealt fairly with the plaintiff. In *Kansas City, M. & B. Ry. Co.* v. *Chiles,* 86 Miss. 361 [38 So. 498], quoted in *Wilson* v. *San Francisco-Oakland Terminal Railways,* 48 Cal.App. 343, 350 [191 P. 975], it was said: "No release of this nature should be upheld if any element of fraud, deceit, oppression, or unconscionable advantage is connected with the transaction. And in passing on the validity of such release, when assailed, all surrounding conditions should be fully developed, and the relative attitudes of the contracting parties clearly shown. So that the jury, in the clear light of the whole truth, may rightly decide which story bears the impress of verity."

█ The defendant contends that the court should have granted its motion for a directed verdict following the trial on the issues of negligence and contributory negligence. The evidence bearing on the happening of the accident produced on the second trial was substantially the same as on the first. From this evidence the jury was justified in finding that the defendant knew of the presence of the cotton pickers and of the children upon his premises; that in the absence of boundaries or barriers between the cotton patch, the graveled yard and the driveway, children at play would be expected to be found on any part of the premises; that workers, in order to engage in the employment, must be accompanied by their children was also known to the defendant; that under the circumstances children of workers were invitees to whom he owed the duty of ordinary care to look out for their safety; that the defendant neglected to exercise that duty by failing to keep the proper outlook as he approached the areas where children might be expected; and that the mother was not guilty of such negligence as would bar a recovery.

Inasmuch as the record discloses sufficient evidence on all

of the issues to require the plaintiff's case on both trials to be submitted to the jury, the verdicts and the orders should not be disturbed.

The judgments and the orders are and each of them is affirmed.

Gibson, C. J., Curtis, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied January 20, 1944.