**Roy W. WEST, Sr., Administrator of the Estate of Roy W. West, Jr., deceased, Plaintiff,**

v.

**Kenneth W. WHEATLEY et al., Defendants.**

**Civ. A. No. 3627.**

United States District Court, D. Delaware.

May 26, 1970.

Jacob Kreshtool, Sheldon N. Sandler, and Samuel V. Abramo, of Dorsey, Kreshtool, Paul & Abramo, Wilmington, Del., for plaintiff.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendants.

## OPINION

LATCHUM, District Judge.

This action, brought under the Delaware Wrongful Death Statute[1] and the Federal Civil Rights Act[2] by Roy W. West, Sr. ("West, Sr.") as Administrator, seeks the recovery of damages for the death of Roy West, Jr. ("West"). West was shot and killed by Trooper Kenneth W. Wheatley ("Wheatley") of the Delaware State Police shortly after midnight of November 1, 1966 while the trooper was attempting to apprehend and arrest West.

The plaintiff is a Pennsylvania citizen. The defendants, officers of the Delaware State Police and members of the Delaware State Highway Department, are citizens of Delaware. Jurisdiction is based upon the existence of a federal question,[3] denial of civil rights[4] and diversity of citizenship between the parties.[5]

The case is presently before the Court on motions for summary judgment filed by both parties.

The relevant circumstances may be summarized as follows: At about 12:30 a.m. on November 1, 1966, Trooper Wheatley and his partner, Trooper Thomas Roman ("Roman") were on routine patrol checking business places along the Philadelphia Pike. While so engaged at the intersection of the Philadelphia

1. 10 Del.C. §§ 3701, 3704.

2. 42 U.S.C. §§ 1981, 1983.

3. 28 U.S.C. § 1331.

4. 28 U.S.C. § 1343.

5. 28 U.S.C. § 1332; the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs.

Pike and Delaware Avenue, they noticed a 1966 Chevrolet traveling south on the Pike toward Wilmington at what appeared to be an excessive rate of speed. The officers immediately followed the speeding vehicle and clocked it at a speed in excess of 75 miles per hour.[6] When the unlawful speed was noted, Roman, who was driving the patrol car, activated the siren and the officers prepared to apprehend the speeding driver.[7] The driver of the pursued car (later learned to be West) accelerated to speeds in excess of 100 miles per hour and ignored red lights at several intersections. In the vicinity of 36th and Market Streets, the patrol car attempted to overtake the fleeing vehicle "in an effort to pull [it] over to the side." As the patrol car drew abreast of West's vehicle, Wheatley was able to see that the driver was a white male with dark hair and dark clothing and he "noticed him [West] take his wheel and jerk it to his left" so that his vehicle moved laterally toward the patrol car. When this occurred, Wheatley yelled to Officer Roman: "He is going to ram us!" At this point both vehicles were traveling between 110 and 120 miles per hour. Trooper Roman applied the brakes, turned to the left, moving the patrol car three to six feet away from the West vehicle in order to avoid a collision. While the vehicles never collided, the West vehicle, when it swerved to the left, came within one or two feet of the patrol car.

Upon regaining control, Roman continued the chase south on Market Street again at speeds of 100 miles per hour or more. At the intersection of 18th and Market Streets, West, attempting a right turn, lost control of his vehicle and struck a stone wall and tree. West jumped from his vehicle and ran north across 18th Street. The officers arrived at the scene and saw West making his escape. Wheatley, when 50 to 75 feet away, called to West: "State Police, halt!" West continued to run up the driveway of a home on the north side of 18th Street. Wheatley followed about 25 to 50 feet behind up the dark driveway, calling: "State Police, stop!", "State Police, come on out!" Wheatley, upon seeing West run behind the houses toward Market Street, drew his revolver and shouted: "State Police, stop or I'll shoot!" West did not stop and Wheatley fired a shot at his feet. West continued to run across Market Street; Wheatley again commanded: State Police, stop or I'll shoot." West still did not stop. Wheatley, then 125 to 175 feet away, shot at West, hit and killed him.[8]

From these facts, the defendants argue that Wheatley was justified, and indeed obligated as a conscientious police officer, to use such force as was necessary, including the use of a weapon, to apprehend West. They point out that 11 Del. C. § 1904(c) provides:

"(c) A peace officer, who has reasonable grounds to believe that the person to be arrested has committed a felony, is justified in using such force as may be necessary to effect an arrest, to prevent escape or to overcome resistance only when—

(1) There is no other apparently possible means of making the arrest or preventing escape; and

(2) The officer has made every reasonable effort to advise the person that he is a peace officer and is making an arrest."

Defendants contend that the incident, when West jerked the wheel of his vehicle causing it to swerve toward the patrol car as if to ram it, furnished reasonable grounds for Wheatley to believe that

---

6. The posted speed limit was 45 miles per hour.

7. Wheatley radioed Troop Headquarters when they began the chase. When the vehicle reached 41st and Market (Market being a continuation of the Philadelphia Pike) Wheatley was able to observe the license plate of the pursued car.

8. Later investigation revealed that West was driving a car which he had stolen in Philadelphia earlier that evening. The officers, however, had no knowledge of this fact during the chase.

West had committed an assault with intent to murder in his presence.[9] Hence, defendants conclude that Wheatley was justified, in attempting to arrest for a felony, to use such force as was necessary, including the firing of his service revolver at West, after the officer identified himself and determined that no other apparently possible means existed for making the arrest. State v. Winsett, 205 A.2d 510, 517 (Super.Ct.Del.1964).

On the other hand, arguing from the same facts, plaintiff contends, first, that Wheatley had no reasonable grounds to believe a felony had been committed. He states that the most reasonable hypothesis for the swerve of the West car was that it occurred with no intent to ram the police vehicle or commit an assault but simply occurred as a result of West's efforts to control his vehicle at a high speed on a dark street while being harried by the patrol car. Second, plaintiff claims that the force used to effect the arrest was unreasonable because there were other apparently possible means of making the arrest.[10] He points out that Wheatley's partner was in the immediate vicinity and could have been expected to join the pursuit; that since Wheatley was in radio contact during the chase with troop headquarters, it was reasonable to expect additional help was on the way; that nothing occurred to lead Wheatley to believe that West was armed, and that there was nothing preventing Wheatley from continuing to pursue West.

 The essential issues in this case are: (1) whether Wheatley "had reasonable grounds to believe" that West had committed a felony in his presence and (2) whether the force used in attempting to effect the arrest was reasonable. While the basic facts are not in dispute, the parties sharply disagree as to the inferences to be drawn from these facts. Where the general facts of a situation, although not in dispute, reveal aspects from which inconsistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ, the case should not be determined by summary judgment. The drawing of inferences from, and the acceptance of hypotheses arising out of, a given factual situation are ordinarily the responsibility of the finder of facts. Winter Park Tel. Co. v. Southern Bell Tel. & Tel. Co., 181 F.2d 341 (C.A. 5, 1950). "The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment." Bragen v. Hudson County News Co., 278 F.2d 615, 618 (C.A. 3, 1960). Only when one inference could be reasonably drawn from the undisputed evidentiary facts would summary judgment be proper. Further, in ruling on a motion for summary judgment, the Court must take the view of the evidence most favorable to the party opposing the motion, giving the opponent the benefit of all favorable inferences which may reasonably be drawn. If, when the evidence is "so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits." Ramsouer v. Midland Valley R. Co., 135 F.2d 101, 106 (C.A. 8, 1943). This admonition is particularly appropriate when the inferences which the parties seek to draw here deal with questions of motive, intent, subjective feelings and reactions. 3 Fed.Prac. & Proc., Barron & Holtzoff (Wright ed.) § 1232.2. The case cannot be taken from the trier of the facts simply because the respective parties, by cross motions for summary judgment, assert that there is no genuine issue of material fact. American Fidelity and Casualty Co. v. London and Edinburgh Ins. Co., 354 F.2d 214, 216 (C.A. 4, 1965).

---

9. An assault with intent to commit murder is a felony in Delaware. 11 Del.C. § 577.

10. 11 Del.C. § 1904(a) provides: "No unreasonable force or means of restraint shall be used in detaining or arresting any person."

Since the Court finds that conflicting inferences could reasonably be drawn from the basic facts and that reasonable men might reach different conclusions on either of the two essential issues, the case is not appropriate for summary judgment. The motions of both parties therefore will be denied.

An order will be entered in accordance with this opinion.