**CARPENTER INTERNATIONAL, INC., Plaintiff,**

**v.**

**KAISER JAMAICA CORP. et al., Defendants.**

**Civ. A. No. 4352.**

United States District Court, D. Delaware.

Jan. 17, 1974.

---

Wilmington, Del., and James T. Lewis of Lewis, Mitchell & Moore, Vienna, Va., for plaintiff.

Charles F. Richards, Jr. and Stephen E. Herrmann of Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

LATCHUM, Chief Judge.

Plaintiff, Carpenter International, Inc. ("Carpenter"), a Texas corporation, seeks to recover a total of $534,942.38 from the defendants, Kaiser Jamaica Corp., Reynolds Jamaica Aluminum, Ltd. and Anaconda Jamaica, Inc., each a Delaware corporation and a partner in Alumina Partners of Jamaica ("Alpart") for an alleged breach of a contract which Carpenter had entered into with Alpart. The jurisdiction of this Court is conferred by 28 U.S.C. § 1332.

The defendants have moved for summary judgment pursuant to Rule 56, F.R.Civ.P., on the ground that a release executed by the plaintiff bars the present action. The plaintiff has also moved for summary judgment to strike as insufficient at law the defense that the present action is barred by the proffered release. The background dealings between the parties concerning the alleged release may be summarized as follows:

On June 24, 1970 plaintiff entered into a written contract with Alpart to perform certain concrete work in connection with construction of defendants' St. Elizabeth Plant in Jamaica, West Indies. Plaintiff's construction work was apparently near completion on June 8, 1971 when Douglas A. Robertson ("Robertson"), plaintiff's project manager, wrote to R. W. Hart ("Hart"), defendants' project manager, requesting that monies retained under the contract by defendants were due to the plaintiff and should be released immediately. (Hart afft., Ex. A).[1] The same day, Kenneth L. Sipes, Jr. ("Sipes"), plaintiff's vice-

Murray M. Schwartz of Murdoch, Longobardi, Schwartz & Walsh, P. A.,

---

1. Docket Item 13.

president of purchasing, also wrote to the defendants requesting that monies retained on the construction contract be released to the plaintiff. (Hart afft., Ex. B). Sipes included in his letter a "Release and Waiver of Lien" form which was signed by Daniel J. Shea ("Shea"), plaintiff's executive vice-president. (Carpenter afft., Ex. A).[2] This release contained the following pertinent language:

### RELEASE AND WAIVER OF LIEN ST. ELIZABETH PLANT CONTRACTS

"In consideration of the past payment of Kaiser Engineers Americas, Inc. (hereinafter called 'Engineer') acting as agent for the Owner, Alumina Partners of Jamaica, of $875,714.40, receipt of which is hereby acknowledged, and in consideration of $132,960.55 to be paid by Engineer, acting as agent for the Owner to Carpenter International, Inc. (hereinafter called 'Contractor') and for other good and valuable consideration and in accordance with the Terms and Conditions of Contract No. 6942–0026 between Owner and Contractor dated as of 24 June 1970, as changed or amended through Change Order 'I' Contractor hereby releases Owner and Engineer, their directors, officers, agents and employees and property from any and all claims arising directly or indirectly under said Contract, as amended including Field Transmittal Memoranda numbered 1 through 87, except for the following claims which are hereby expressly reserved.

Wage Escalation per Exhibit 'G' Any and all insurance claims."

Hart reportedly received Robertson's letter on June 9 and Sipes' letter on June 14. (Hart afft., par. 8). Hart, after receiving Robertson's letter which did not include a form of release, wrote on June 9 to Robertson explaining that the plaintiff must first comply with the procedures precedent to final payment outlined in the contract before the retained monies could be turned over to the plaintiff. (Hart afft., Ex. C). Article 23 E of the contract specifically required the plaintiff to execute a general release of any and all claims against the defendants arising from the contract before the defendants were obligated to turn over the final payment.[3] Robertson was assured by Hart's letter that once the procedures precedent were complied with, the retention monies would be promptly paid.

Hart afterward received Sipes' letter and Shea's Release and Waiver of Lien but still was reportedly not satisfied with the express reservation of "Wage Escalation per Exhibit 'G'" and "any and all insurance claims" contained in the release. (Hart afft., par. 10). However, after a telephone conversation with Robert D. Carpenter ("Carpenter"), president of plaintiff, the exceptions to the release were reworded to read: "Wage Escalation per Terms and Conditions of Contract". Furthermore, the wording of the Shea release was altered to define the contract "as changed or amended through Change Order 'J'" instead of "through Change Order 'I'" and the monetary recitations in the release were altered to reflect additional money which had been subsequently turned over to plaintiff. This revised release was signed on June 14, 1971 by Robertson (Hart afft., Ex. D) and apparently at least a major portion of the retained funds was released shortly thereafter (Hart afft., par. 12); although Carpenter points out the funds were not completely paid out until December 1971 (Carpenter afft., par. 31).

Defendants now contend that since the present action is based upon claims allegedly arising out of the contract, the

2. Docket Item 18.

3. Article 23 E of Exhibit C to the contract reads in part:
"As conditions precedent to final payment under this Contract, Contractor shall execute a written general release of all claims against Owner and Engineer and their property, agents and employees arising under or in any way connected with this contract. . . ." (Hart afft., par. 5).

Robertson release is an absolute bar at law.

Plaintiff disputes this assertion by, *inter alia*,[4] presenting an affidavit of Carpenter which contends that the actions and conduct of the defendants misled the plaintiff into believing that regardless of the broad language of the Robertson release, it was no bar to an action on the claims which are asserted in this case. This affidavit includes a letter by Carpenter to Hart dated June 1, 1971, requesting the defendants to give some consideration to relieving the economic burden placed on plaintiff due to unwarranted and unanticipated costs incurred in construction of the defendants' plant which costs ultimately have come to form the basis of the claims in the present action. (Carpenter afft., Ex. B). Carpenter stated in the June 1 letter that while no claims had been filed as of that date, relief should be afforded the plaintiff in the form of a contract adjustment or future work. A conference was requested by Carpenter to discuss the matter of economic relief.

Carpenter further avers (par. 16) that in the very conversation with Hart on June 14 in which the language of the exceptions to the release was discussed, Hart assured him that a meeting concerning Carpenter's June 1 letter was being planned and would be held in a short time. No suggestion was made by Hart that the release to be executed that day would in any way jeopardize plaintiff's bargaining position at the contemplated meeting for the economic relief requested.

Plaintiff further argues that the release was executed primarily for the purpose of freeing funds to be used by the plaintiff for the benefit of the defendants. This is so, plaintiff asserts, because the money which was freed from retention was used by the plaintiff to satisfy a wage increase awarded unilaterally by defendants to plaintiff's labor force and that the payment of the higher wages avoided a strike which would have crippled defendants' entire plant construction and operation. After making the higher wages award, defendants reportedly refused to reimburse the plaintiff immediately for the increase but instead insisted that an audit was first required which would have taken months to complete. Thus, the plaintiff contends that it was induced into executing the release never intending or suspecting defendants could subsequently use the release to bar suit on the subject of the meeting which had been discussed and planned in some detail that very day.

The general rule under California law[5] is that a release whose language is clear and explicit, and does not involve absurdity becomes the agreement of the parties as a matter of law. In such a case extrinsic evidence beyond the face of the release is excluded because it cannot serve to prove what the agreement was; that being determined as a matter of law by the language of the agreement itself.[6] Averett v. Carrigue, 77 Cal.App.2d 170, 174 P.2d 871, 872 (Dist.Ct.App.1946). Thus, if the plaintiff had advanced no evidence other

---

4. Plaintiff defends against the summary judgment motion on the additional grounds that the terms of the release should be interpreted as limiting only formal claims filed on change orders up to Change Order J, but not limiting claims which could lead to additional change orders; and on the grounds that conduct by defendants after execution of the Robertson release acted as a waiver of the release even if the Court should find the release originally binding. Due to the Court's denial of defendants' motion for summary judgment on other grounds, these additional arguments of plaintiff need not be considered.

5. The contract is governed by California law since the parties both agreed California law would apply and absent some compelling reason, Delaware Courts will abide by the intent of the parties. Wilmington Trust Co. v. Wilmington Trust Co., 26 Del.Ch. 397, 24 A.2d 309. This being a diversity action, this Court is bound to apply Delaware's conflict of law rules.

6. The question of modification of a written agreement is a question of substance and hence governed by California law. See Restatement (Second) of Conflicts § 205e.

than that directed toward showing the parties mutually intended the release to exclude a specific claim, contrary to the clear language of the release, summary judgment against plaintiff would have been justified as it was in *Averett.*

■ However, there is an exception to the general California rule which provides that evidence of fraud, misrepresentation, deception, overreaching, or "other unfair conduct" on the part of a defendant may be effective to vary the terms of an otherwise clear and explicitly worded release. Casey v. Proctor, 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579 at 582 (Supreme Court en banc, 1963).

The Court in *Casey* states that:

"It has often been held that if the releaser was under a misapprehension, not due to his own neglect,[6] as to the nature or scope of the release, and if this misapprehension was induced by the misconduct of the releasee, then the release, regardless of how comprehensively worded, is binding only to the extent actually intended by the releaser." 28 Cal.Rptr., p. 310, 378 P. 2d, p. 582.

The Second Circuit recently recognized this exception in Gelfand v. Tanner Motor Tours, Ltd., 450 F.2d 786 (C. A.2, 1971) wherein the Court stated that under California law extrinsic evidence may be admissible to vary a clear release if the release had been induced by "misapprehension on the part of the releasor not due to his own neglect but caused by misconduct by the releasee." p. 788. However, no claim of such improper conduct was advanced by the plaintiff in *Gelfand.*

■ The footnote in the above quote from *Casey* indicates that prior California cases have held misapprehension not due to one's own neglect can exist if the releaser cannot read, if he is under emotional stress, or is suffering from some physical impairment. It is quite clear that the plaintiff does not fall into one of these categories. But these categories are not classified by the California Court as being exclusive. The Supreme Court of California points out in Jordan v. Guerra, 23 Cal.2d 469, 144 P.2d 349 (Sup.Ct.1943) that the exception to the general rule is not:

". . . confined to cases where the plaintiff could not read or was prevented by the defendant from reading the release, or was mentally incompetent to comprehend the meaning of its language, regardless of any other device or deception employed to mislead him. In any case it is for the trier of the facts to determine what the plaintiff understood was covered by the writing and whether his understanding different from the writing was induced by the defendant. If a misconception be found and that the defendant was responsible therefor, the contract insofar as it purports to release claims other than those understood by the plaintiff to be included, is ineffective to that extent. . . ." p. 352.

■ Two opposing inferences may be drawn from the facts asserted by the plaintiff. First, a reasonable man may believe the plaintiff was perfectly aware that the June 14th instrument was a total release to all claims under the contract; that defendants had made the all inclusive nature of the release clear to the plaintiff by their insistence that the language of the release include a reservation of only those claims relating to "Wage Escalation per Terms and Conditions of Contract"; and that the meeting which Carpenter and Hart discussed on June 14 was planned, not to give the plaintiff an airing of a legally enforceable claim, but rather as a gratuitous gesture on defendants' part to see whether the plaintiff could be aided in some manner from its economic difficulties. Nonetheless and without considering probabilities, the inference could possibly be drawn from the facts asserted, when viewed most favorably to plaintiff as they must when considering defendants' motion for summary judgment, Hood v. McConemy, 53 F.R.D. 435, 440 (D.Del.1971), that plaintiff was under a misapprehension that the release

excluded the present claims due to misleading conduct of the defendants.

The drawing of inferences from and the acceptance of hypotheses arising out of a given factual situation are ordinarily the responsibility of the finder of facts. West v. Wheatley, 313 F.Supp. 656, 659 (D.Del.1970). Thus, this Court on the present record is unable to hold as a matter of law that the plaintiff's misapprehension, if any, in the present case was due to its own neglect and was not the result of misleading conduct on the part of the defendants. Since misapprehension induced by the misconduct of the defendants is, under California law, grounds for limiting the terms of the release to only those claims understood by the plaintiff to be included, the summary judgment requested by defendants will be denied.

The California cases cited by defendants do not persuade this Court to hold otherwise. In *Averett,* supra, the Court refused evidence which tended to show the mutual intention of parties when the language of the release was clear. Contrary to the present case, the plaintiff in *Averett* failed to contend "that the release agreement was invalid because of fraud, mistake or for any other reason." 174 P.2d at p. 873. Thus, *Averett* is an example of the application of the general rule, not the exception. Jordan cited by defendants is inapplicable as discussed *supra.* In Moore v. Rogers, 157 Cal. App.2d 192, 320 P.2d 524 (Dist.Ct.App. 1958), the appellant apparently offered to prove fraud, mistake of fact and a failure in the meeting of minds in an effort to have the Court alter clear terms of a release. However, no evidence was received by the lower court other than the release itself which was found binding and a complete bar to appellant's action. This finding was upheld on appeal, but not because evidence was inadmissible at law to show fraud or mistake, but rather because at trial appellant's offer of proof was insufficient in that he failed to outline *facts* which would support appellant's self expressed conclusion there was deception practiced upon him.[7] The present case is, hence, easily distinguished. Neither Raynale v. Yellow Cab Co., 115 Cal.App. 90, 300 P. 991 (Dist.Ct.App.1931) nor Meyer v. Haas, 126 Cal. 560, 58 P. 1042 (Sup.Ct. 1899) reject the exception applied by this court and are thus equally dissuasive.

█ While on the present record the basic facts are not in dispute, there are rational opposing inferences which may be drawn therefrom. To determine which of the inferences is correct calls for a factual determination which is a function of the trier of the facts and is not one for the Court to resolve on a motion for summary judgment. Bragen v. Hudson County News Co., 278 F.2d 615, 618 (C.A. 3, 1960). Thus, defendants' motion for summary judgment will be denied. For the same reasons, the plaintiff's cross motion for summary judgment will also be denied because the trier of fact may, after considering the trial evidence, conclude that the release was valid as written and that the plaintiff was in no way induced into giving the release by any misleading conduct on the part of the defendants. Plaintiff's other arguments that the release must, as a matter of law, be read to exclude the present claims or that there was a waiver of the release as a matter of law are equally untenable on the present record and, hence, are rejected.

---

7. An offer of proof is insufficient if it contains conclusions. Goldstein Trial Technique (Second) § 13.30. *See* Blackburn v. Union Oil Co. of California, 90 Cal.App.2d 775, 204 P.2d 69, 71 (Dist.Ct.App.1949).