## DAVID T. ETIMANI and NATIONAL PACIFIC INSURANCE, LTD., a Corporation, Plaintiffs

### v.

## SAMOA PACKING COMPANY and DOES I-X, Defendants

High Court of American Samoa
Trial Division

CA No. 97-89

April 2, 1991

1

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiffs, John L. Ward II
For Defendant Samoa Packing Company,
Robert A. Dennison III

On Motion for Summary Judgment:

*Facts*

On November 18, 1987, plaintiff Etimani, in the course of his employment with Polynesia Shipping Services, Inc., fell and was injured while on the premises of defendant Samoa Packing Company, a fish-packing company. Etimani apparently filed a claim for workmen's compensation and on January 11, 1989 signed a release prepared in September 1988 at the request of plaintiff N.P.I., the workmen's compensation insurer of Polynesia Shipping Services. The release, notarized the same date, reads in part:

DAVID ETIMANI, hereinafter called the "Payee", . . . in consideration of the sum of . . . ($11,065.82) paid by NATIONAL PACIFIC INSURANCE COMPANY (hereinafter Payor). . . and POLYNISIAN [sic] SHIPPING COMPANY, INC., . . . hereby release and discharge Payor and POLYNISIAN [sic] SHIPPING COMPANY, INC. and any and all other persons and parties in the world, from *any and all* claims, demands, damages, actions, or causes of action whatsoever, which said Payee has, has ever had or may have, whether or not known or whether anticipated or not, resulting from, arising out of, to arise out of or connected with, directly or indirectly, with that certain industrial injury, to wit: injury to his left leg which occurred on or about November 18, 1987, wherein claimant was injured. . . . [S]aid payment . . . compromises and settles all disputes between the parties for the purpose of payment of this claim. . . . THE PAYEE FURTHER AGREES to indemnify and hold harmless the Payor and POLYNESIAN SHIPPING COMPANY, INC, against loss or liability arising from any and all claims, demands, damages, actions, causes of action or any other matter whatsoever, which may have been or may hereafter be at any time made or brought as a result of, arising out of the matters released hereby and further, the undersigned waives the right under A.S.C.A. § 32.0501, et seq., to maintain any further action or suit against the Payor and POLYNESIAN SHIPPING COMPANY, INC..

On November 3, 1989, plaintiffs Etimani and N.P.I. filed a complaint against defendant Samoa Packing, alleging that its negligence caused Etimani's fall and resulting injuries. Defendant Samoa Packing Company ("Samoa Packing") moves for summary judgment, claiming two affirmative defenses: (1) that the claims of both plaintiffs David Etimani and National Pacific Insurance Limited ("N.P.I.") are barred by the terms of the global release signed by Etimani; or (2) alternatively, that Etimani assigned his claim to N.P.I. under the terms of A.S.C.A.

3

§ 32.0669[1] and thus must be dismissed as a party to the proceedings. Neither assertion can be sustained as a matter of law, and we deny summary judgment to defendant on both issues for the reasons noted below.

### Discussion

Summary judgment is appropriate where the pleadings and supporting papers show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.C.R.C.P. 56. In ruling on such a motion, the court must view all pleadings and supporting papers in the light most favorable to the opposing party, *United States v. Diebold, Inc.*, 369 U.S. 654 (1952), treat the opposing party's evidence as true, and draw from such evidence the inferences most favorable to him. *Lokan v. Lokan*, 6 A.S.R.2d 44, 45 (1987).

### I. Release

In support of its contention that the release also discharged any and all claims which Etimani may have had against it, Samoa Packing alludes to the old common law rule that the release of one tortfeasor will operate to release all. 76 C.J.S. *Release* § 50 (1952); Annotation, *Release of One Joint Tort Feasor as Discharging Liability of Others: Modern Trends*, 73 A.L.R.2d 406, 407 (1960); 66 Am. Jur. 2d *Release* § 37 (1973). The rule does not apply here for several reasons.

---

[1] [A]cceptance of compensation under an award in a compensation order operates as an assignment to the employer of all rights of the individual entitled to compensation to recover damages against such third person unless such individual commences an action against such third person within 6 months after such award. . . . Where the employer is insured and the carrier has assumed the payment of the compensation, the carrier shall be subrogated to all rights of the employer under this section.

A.S.C.A. § 32.0669(a), (e).

4

First, the employer is not a joint tortfeasor.[2] Most workmen's compensation statutes provide that an employer can be liable *only* under the workmen's compensation act; this "exclusive remedy" provision extinguishes any tort cause of action against an employer. 2A Larson, at § 76.00. The language of our corresponding "exclusive remedy" provision[3] impels the same conclusion.[4] *See Shields v. Bechtel Power*

---

[2] *See* 1 A. Larson,. The Law of Workmen's Compensation §§ 1.20, 2.00 (1983) (stressing fundamental differences between tort and workmen's compensation schemes in philosophy, tests of liability, injuries compensated, elements of damage, defenses available, amount of compensation, and ownership of award). Furthermore, a third-party tortfeasor cannot sue or join a negligent employer because "the employer is not jointly liable to the employee in tort; therefore he cannot be a joint tortfeasor" and "[t]he claim[s] of the employee against the employer . . . [and] the third person . . . are different in kind and cannot result in a common liability." 2A Larson, at § 76.20. Compensation law is *"wholly* substitutional" for the common law of tort, not in the sense of liability for liability and exemption for exemption, but "[o]ne entire system was substituted for another, and when the old system went out, all the exceptions and immunities that were a part of the old system naturally went out with it." 1C Larson, at § 50.43).

[3]The liability of an employer [under this Act] shall be *exclusive* and in place of all other liability of such employer to . . . anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. . . . A.S.C.A. § 32.0522(a) (emphasis added). The language is identical to that of the Federal Longshoremen and Harbor Worker's Compensation Act ("L.H.W.C.A."), 33 U.S.C. § 905, and the Federal Employees' Compensation Act ("F.E.C.A."), 5 U.S.C. §757(b). *Haleck v. Scanlan,* 4 A.S.R. 998, 1002 (1975) (Workmen's Compensation Act of American Samoa, 24 A.S.C. [recodified as Title 32], "extraordinarily similar to and seems to have been drawn largely from [L.H.W.C.A.]"); *see also United Airlines v. Wiener,* 335 F.2d 379, 403 (1964) (exclusive remedy clauses in L.H.W.C.A. and F.E.C.A. are identical).

[4] Most jurisdictions recognize only one exception to the "exclusive remedy" provision --- an indemnity action by a third party against an employer, which is not an action for "damages" but for reimbursement. 2A Larson, at §§ 76.41-76.50. But even then the employer is not a joint tortfeasor, since a claim of indemnity is grounded in contract or equity

*Corp.*, 439 F. Supp. 192 (D. Wyo. 1977); *Cripes v. Haynes*, 350 So. 2d 956 (La. 1977); *Newsome v. Finch*, 375 So. 2d 1144 (Fla. App. 1979); *Certain Underwriters at Lloyd's v. United States*, 511 F.2d 159, 163 (5th Cir. 1975).

Second, the policy reasons usually given for the rule are not applicable in the workmen's compensation context. The reasons usually given to explain why general releases are interpreted to include unnamed third parties are: (1) to protect the potentially liable party who settles against third party suits for indemnity or contribution[5] and (2) to prevent double recovery by the injured party.[6] Neither rationale applies in workmen's compensation cases. The employer who settles is exempt from contribution or indemnity liability as a joint tortfeasor.[7] Any liability he has under a contract theory of indemnity arises from his independent relationship with the third party. As for double recovery, the compensation statute limits an employer's liability to pay compensation to "the excess of the amount which the commissioner determines is payable . . . over the amount [the employee] recovered against such third person." A.S.C.A. § 32.0669(c). At the same time, an employer may maintain an action against the employee for any overpayment, preventing double recovery. *Peters v. North River Ins.*

---

rather than tort. 41 Am. Jur. 2d *Indemnity* §§ 2, 20, 21 (1968); *Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Serv.*, 337 F.2d 511, 514 (5th Cir. 1967); *General Electric Co. v. Cuban Am. Nickel Co.*, 396 F.2d 89, 100-02 (5th Cir. 1968); *United Airlines, Inc. v. Wiener, supra* at 402-04.

The possibility of Polynesia Shipping being liable to indemnify defendant under a contract theory is relevant in deciding whether the parties to the release intended to release defendant as a third party beneficiary, *White v. General Motors Corp.*, 541 F. Supp. 190, 194-95 & n.10 (D.C. Md. 1982), and might affect whether defendant could claim the benefit of the parol evidence rule in construing the terms of the release. But no claim to indemnity could transform Polynesia Shipping into a joint tortfeasor.

[5] *Morison v. General Motors Corporation, supra*, at 954; *Auer v. Kawasaki Motors Corp., U.S.A.*, 830 F.2d 535, 539 (4th Cir. 1987).

[6] *State ex. rel Normandy Orthopedics, supra* at 831.

[7] *Supra* note 4.

*Co. of Morristown, N.J.*, 764 F.2d 306, 312 (5th Cir. 1985); *see also* cases cited at 33 U.S.C. § 933 n.30 (1980).

While the joint tortfeasor rule still survives in some jurisdictions, its continued vitality is doubtful. It has been vigorously attacked by commentators, 73 A.L.R.2d, *supra*, and in the absence of statutory regulation the modern trend favors abrogating the rule and looking to the intent of the parties executing a release to determine who is released. *Id.* The modern "intent of the parties" rule is also reflected in the *Restatement of Law*; Restatement (Second) of Torts § 885(1) (1979) provides: "[A] valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them." This "is a reversal of earlier common law rules." *Id.*, comment b. As this Court has, in construing the common law, ordinarily followed the *Restatement of Law*, *see Tung v. Ah Sam*, 4 A.S.R. 764 (1971); *DBAS v. Ilalio*, 5 A.S.R.2d 1 (1987), we reject the argument that the release also discharges Samoa Packing on the basis of the early common law rule on the release of joint tortfeasors.

Samoa Packing additionally argues that Etimani's execution of the release was "knowing and intelligent" and that the document thus executed "unequivocally" released "any and all persons and parties in the world from any and all claims and causes of action arising out the incident of November 18, 1987, in which [Etimani] was injured." Memorandum of Points and Authorities, at 2. These factual conclusions, however, are made on the basis of an affidavit from the then lawyer for the insurer. The affidavit reads in pertinent part: "[t]he Release *appears* to have been duly executed by David Etimani before a notary public on or about January 11, 1989, *as indicated on the release*." (Emphasis added). The affidavit really adds nothing in the way of explaining the release nor circumstances behind the release, which, in our view, are far from unequivocal.

The context of the release is Polynesia Shipping's liability for workmen's compensation benefits pursuant to the Workmen's Compensation Act (hereafter the "Act"). The Act disallows compromise contracts between the employer and employee.[8] Thus, there can be no

---

[8] *See* A.S.C.A. § 32.0554(b) ("[N]o agreement by an employee to waive his rights to compensation . . . is valid."), and A.S.C.A. § 32.0672 ("No . . . release of liability for compensation . . . payable [under the Act] is

7

agreement to prevent the employee from receiving or altering the amount of compensation fixed and guaranteed to him by statute. We note, however, that the terms of the release before us certainly purport to reflect a situation of settlement in the sense of mutual compromise --- "[the] payment [made to Etimani] . . . compromises and settles all disputes between the parties." Release, para. 2. While the Act does recognize those settlement agreements which have been approved by the Workmen's Compensation Commission as effectively discharging an employer's liabilities under the Act, *see* A.S.C.A. § 32.0668, we are unable to determine from the face of the release in issue whether such commission approval was ever obtained. In this regard there is, without further evidence, a doubt as to the validity of the release. The more troublesome question is whether Etimani, in order to receive workmen's compensation benefits to which he was otherwise entitled under the Act, was at all required to sign a release in the first place. (The concern here is significant since Etimani does not appear to have been represented by counsel when he ostensibly signed away rights of which he may not have been aware.) In other words, was there consideration given to Etimani for the global release? The extent of the record is, again, not sufficiently clear on these points.

Moreover, if Polynesia Shipping's liability to Etimani for compensation is based on the provisions of A.S.C.A. § 32.0605 (dealing with permanent total disability) or pursuant to § 32.0609 (providing a schedule for p ermanent partial disability), then the release's compromise and concession language is not only thoroughly misleading but also completely meaningless, since the benefits thereunder are capable of calculation to a mathematical certainty and thus beyond dispute. Indeed, in as much as the release does reflect an exercise of compromising Etimani's statutory benefits, it is invalid. *See* A.S.C.A. § 32.0672.

On the facts before us, we are unable to say whether the release in question is, indeed, a valid release given the Act's restrictions on compromise contracts. The defendant has provided no showing regarding the context in which the release was signed --- the negotiations preceding its execution; the circumstances under which it was signed; whether the underlying payment was a settlement under A.S.C.A. § 32.0668, commuted per A.S.C.A. § 32.0666; or whether the Commissioner had approved such settlement or issued a formal compensation order. All we know is that the release was prepared in

_____

valid, except as otherwise provided for by [the Act].").

8

September 1988 at the request of plaintiff N.P.I., signed by plaintiff Etimani on January 11, 1989, notarized, and accompanied by an interpreter's certificate (apparently signed by Etimani) stating that the release was translated, acknowledged, understood, and freely executed. In these circumstances and for purposes of summary judgment, the inference of invalidity must be drawn in plaintiff's favor. T.C.R.C.P. 56.

Furthermore, we cannot presume that an injured worker settling a workmen's compensation claim clearly intended to release all his future claims against a third party who did not participate in negotiating the contract and apparently paid no consideration for such release. In circumstances where a releasor was led to believe that he was getting all that he was entitled to in damages or benefits, some courts have construed the release given as limited to the "settlement of those matters only to which the minds of the parties met, and may not be considered to be in satisfaction of anything not consented to by the plaintiff." *Jordan v. Guerra*, 144 P.2d 349, 352 (Cal. App. 1943); *see also Ruiz v. City of Albuquerque*, 577 P.2d 424 (N.M. App. 1978).[9] That Etimani was led to believe that he was only entitled to a payment of $11,065.82 for injuries sustained is yet another inference (most favorable to plaintiff) which might reasonably be drawn in the following circumstances: Etimani was not aware that he could also file a common law action in damages against third parties; he was neither represented by counsel, nor did the terms of the release give him the slightest hint that he also had common law rights against third parties which were also the subject of settlement; and the release was given in pursuance of a workmen's compensation claim.[10] Therefore, the release (presuming it is valid) would at best extend only to plaintiff Etimani's workmen's compensation claims and not to any common law remedies he may have against third parties. *Id.*

---

[9] In *Jordan v. Guerra*, plaintiff accepted $150.00 in settlement of a claim for the death of his son. Plaintiff executed a release of all liability stemming from the accident, having been led to believe that all that he could claim was funeral expenses and time lost. In his action for wrongful death, the court construed the release as being ineffective beyond the discharge of liability for funeral expenses and time lost.

[10] It was further held in *Ruiz v. City of Albuquerque* that any reasonable doubt as to the intent of the parties and the effect of a release should be construed in favor of the workman. *Id.* at 428.

For the foregoing reasons we deny summary judgment on the issue.

## II. Assignment of the Claim

Defendant argues in the alternative that plaintiff Etimani "accept[ed] . . . compensation under an award in a compensation order" on January 11, 1989, when he signed the release settling his workmen's compensation claim and thereby assigned all rights to maintain a third-party action to N.P.I. by failing to commence this action within six months.

Jurisdictions vary as to whether a third party may assert subrogation as a valid defense when the employee attempts to sue. 2A Larson, at §§ 75.40-75.45. In *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596 (1981), the Supreme Court allowed subrogation as a defense in a L.H.W.C.A. case. It held that L.H.W.C.A., 33 U.S.C. § 901 et seq., with language almost identical to that of our statute,[11] divests an employee of all rights to sue a third party six months after he accepts compensation pursuant to an award in a compensation order.[12] *Id.* But a subsequent Supreme Court case, *Pallas Shipping Agency, Ltd. v. Duris,*

---

[11]  Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner of Board [sic] shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

33 U.S.C. § 933(b).

[12]  For collected cases dealing with this issue, *see* Annotation, *Right of Injured Employee to Sue Third-Part Tortfeasor Under, or Affected by, § 33(b) of the Longshoremen's and Harbor Worker's Compensation Act (33 U.S.C. § 933(b))*, 2 A.L.R. Fed. 1015 (1969). In 1984 Congress revised § 933(b), virtually eliminating a *Rodriguez*-type situation, by providing that if an employer does not file suit against a third party within ninety days after the cause of action was assigned under § 933(b), the right to bring such action reverts to the person entitled to compensation. 33 U.S.C. § 933(b), *as amended* by P.L. 98-426, § 21, 98 Stat. 1652 (1984). Our statute has not been so revised.

10

461 U.S. 529 (1983), vitiates the cases cited by defendant[13] and indeed provides support for plaintiffs' argument; that is, defendant has failed to plead or prove the "award in a compensation order" which A.S.C.A. § 32.0669 requires to trigger assignment of the claim to N.P.I..

The *Rodriguez* Court did not decide whether informal agreements were equivalent to formal orders for purposes of triggering a § 933(b) assignment but assumed for purposes of the decision that they were. *Rodriguez, supra* at 598 n.3. But the *Pallas* Court held that § 933(b) of L.H.W.C.A., 33 U.S.C. § 901 et seq., requires a formal compensation order or award to trigger the assignment of the employee's right of action against third parties to the employer. *Pallas, supra*. We find the Supreme Court's reasoning on a statute so closely paralleling ours[14] to be persuasive. Under L.H.W.C.A. regulations an employer can obtain a formal compensation order simply by requesting it once a voluntary agreement has been implemented. The Court implied that the employer should thus bear any consequences of his failure to secure such an order. *Pallas, supra* at 538. Here, an employer could likewise obtain approval of an agreed settlement from the workmen's compensation commission which would effectively discharge the employer's liability, notwithstanding the Act's provisions against compromise contracts. *See* A.S.C.A. § 32.0668.

We deny summary judgment on the "assignment of claim" issue since defendant has failed to show a formal award as required by A.S.C.A. § 32.0669.

*III. Costs Assessment Under A.S.C.A. § 32.0639*

---

[13] *Sorrentino v. Lloyd*, 528 F. Supp. 1119 (E.D.N.Y. 1981); *Verderame v. Torm Lines*, 670 F.2d 5 (2d Cir. 1982); *Simmons v. Sea-Land Serv., Inc.*, 676 F.2d 106 (4th Cir. 1982), *vacated and remanded* 462 U.S. 1114 (1983).

[14] The language of our statute parallels LHWCA in several provisions cited by the *Pallas* Court. *Compare* 33 U.S.C. §§ 914(e)-(f) *with* A.S.C.A. § 32.0663(a)-(b); 33 U.S.C. § 914(c) *with* A.S.C.A. § 32.0661(a); 33 U.S.C. § 921(c) and A.S.C.A.§ 32.0652; 33 U.S.C. § 921(a) *with* A.S.C.A. § 32.0651; 33 U.S.C. § 921(d)-(e) *with* A.S.C.A. § 32.0653.

Plaintiff asks that the costs of these proceedings be assessed against defendant pursuant to A.S.C.A. § 32.0639. We deny the request. This is a negligence suit sounding in tort rather than a proceeding "in respect to any claim or compensation order" where § 32.0639 would apply.

It is so ordered.