**Rick R. McCRAY, Plaintiff,**

v.

**CASUAL CORNER, INC., Lisa Thomas, and Does 1–50, Defendants.**

**No. SA CV 92–261–LTL(RWRx).**

United States District Court, C.D. California.

Dec. 9, 1992.

James L. Morris, Carol L. Demmler, Rutan & Tucker, Costa Mesa, CA, for defendants.

## ORDER

LYDICK, District Judge.

This matter is here on the motion of defendants Casual Corner and Lisa Thomas for summary judgment. Plaintiff Rick R. McCray ("plaintiff") filed a complaint for racial discrimination, intentional infliction of emotional distress and negligent infliction of emotional distress on November 1, 1991 in the Superior Court of the State of California for the County of Los Angeles against defendants Casual Corner, Inc., Lisa Thomas, and Does 1 through 50 (collectively "defendants"). Defendants timely removed to this court on April 13, 1992. Defendants filed the within motion for summary judgment on November 16, 1992.

### A. Standards for Summary Judgment

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

When a motion for summary judgment is properly made and supported, the nonmoving party may not rest upon his pleading but must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); see also Local Rule 7.14.3. The Supreme Court has held that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). However, the evidence presented in a motion for summary judgment is to be viewed in a light most favorable to the opposing party: "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. at 2513.

Patrick H. Hough, Law Offices of Benjamin P. Wasserman, Long Beach, CA, for plaintiff.

## B. *The Release*

Defendants' primary contention is that plaintiff signed a general release that relieves both defendants from any liability to plaintiff for any causes of action he may have.

▮ A release is an abandonment of a claim that might otherwise be enforced; it constitutes a defense to the assertion of a claim. *Pellett v. Sonotone Corp.*, 26 Cal.2d 705, 160 P.2d 783, 787 (1945). Releases are subject to the provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (West 1982). If the release specifically mentions unknown claims, independent evidence must demonstrate that the releasor intended to release unknown claims. *Casey v. Proctor*, 59 Cal.2d 97, 28 Cal.Rptr. 307, 314, 378 P.2d 579, 586 (1963).

▮ The release in this case applied to both Casual Corner and its employee, Lisa Thomas,[1] and it is a release of "any and all claims, debts, demands, actions and causes of action which [plaintiff] may have arising to date." Exhibit A to Declaration of Melvin Walls ("Walls Decl."). While plaintiff admits signing the release, plaintiff claims in reliance on section 1542 that he did not know "that [he] had a viable claim for discrimination" at the time he signed the release. Declaration of Rick R. McCray ("McCray Decl.") ¶ 11. Therefore, he asserts, a question of fact exists as to whether he intended to release these unknown claims. Defendants, on the other hand, point to plaintiff's deposition testimony:

> Q When had you first come to the conclusion that you had been discriminated against on the basis of your race?
>
> •  •  •  •  •

A [Plaintiff] Probably early 1989.

•  •  •  •  •

> Q Is there any reason why you held off for more than two years before filing a claim of discrimination?
>
> A No, no reason.

Deposition of Ricky McCray ("McCray Depo.") 94–95. Defendants terminated plaintiff's employment on November 5, 1990. McCray Decl. ¶ 5.

▮ Therefore, according to his deposition testimony, McCray believed that defendants were discriminating against him more than a year before he signed the release; yet according to his declaration prepared for purposes of this summary judgment motion, he did not know or suspect that he had a claim. Where an issue of fact is created by inconsistencies in a party's deposition testimony and his declaration in opposition to the motion, that issue is not genuine but is a sham issue. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543–44 (9th Cir.1975). For purposes of the summary judgment, the *Radobenko* court took the facts as first admitted in the deposition testimony rather than the subsequent declaration testimony.

Plaintiff's deposition testimony shows that he knew (or at least suspected) that he had a claim for racial discrimination against defendants. Plaintiff also testified at his deposition that he filed a worker's compensation claim on November 12, 1990 for "stress, sleeplessness, depression, lower back pain, psyche." McCray Depo. 189. Plaintiff executed the release sometime after December 5, 1990. Walls Decl. ¶ 6. Plaintiff knew of his emotional distress claims when he signed the release. Therefore, plaintiff's argument that the release did not extend to the causes of action alleged here is not viable.

▮ Plaintiff also claims that defendants used fraud, deceit and an unconscionable advantage to induce him to sign the release. He asserts that defendant Casu-

---

1. The releasees named are "Women's Specialty Retailing Group, its parent corporation United States Shoe Corporation, their respective successors, assigns, directors, officers, and employees." Exhibit A to Walls Decl. Defendant Casu-

al Corner is an unincorporated division of The United States Shoe Corporation. Defendants' Amended Answer ¶ 5. Defendant Thomas is an employee of Casual Corner. Complaint ¶ 6.

Corner's agent, Melvin Walls, told him "not to worry" about the release and that, as a result, plaintiff believed the release to be null and void. McCray Depo. 217–22. However, in California evidence of a promise directly at variance with a promise in a written contract is not admissible. *Bank of America Nat'l Trust & Sav. Ass'n v. Pendergrass ("Pendergrass")*, 4 Cal.2d 258, 48 P.2d 659, 661 (1935); *Alling v. Universal Mfg. Corp.*, 5 Cal.App.4th 1412, 7 Cal.Rptr.2d 718, 734 (1992).[2] Therefore, any evidence of Walls' statement to plaintiff that he should "not worry" about the release is inadmissible.

Plaintiff relies on *Jordan v. Guerra*, 23 Cal.2d 469, 144 P.2d 349 (1943). The claimant in *Jordan* understood that he was giving up any claims against the defendant, but he was led to believe that he only had certain claims against defendant and that the money he received for signing the release was ample to cover any possible claims. *Jordan* held that where any deception is practiced upon a claimant so that he is misled as to the scope of a release, the release is construed as a settlement of those matters on which there was a meeting of the minds. 144 P.2d at 352. The Supreme Court emphasized that "it is for the trier of facts to determine what the plaintiff understood was covered by the writing and whether his understanding different from the writing was induced by the defendant." *Id.*

The situation here is distinguishable from *Jordan;* plaintiff was not led to believe that the release covered all his claims, but that the release would not be enforced. *Pendergrass* bars evidence of exactly this sort of deception. Absent evidence of Walls' statement "not to worry," the evidence only shows that plaintiff expressed dissatisfaction with the terms of the release and that he understood those terms. When defendants' counsel asked plaintiff at his deposition what he thought the release meant, Plaintiff said:

A   That I am releasing the company of all—and its agent of liability and that this was a final settlement.

Q   And that your signing this check would preclude you from doing something such as bringing the lawsuit that you are presently bringing?

A   There was that possibility, yes.

Q   It was more than a possibility. You knew—

A   Oh, yes, I knew that was what that meant, yes.

Q   You knew this meant you were releasing any claim, whether it be racial discrimination or back pay or wrongful termination or anything?

A   Yes, I understood it to be that, yes. McCray Depo. 218–219.

Plaintiff described at his deposition a conversation between him and Walls in which he told Walls that he did not want to sign the release but that he needed the money. McCray Depo. 220. While defendants assert that the conversation between Walls and plaintiff never took place, Walls Decl. ¶ 7, even if it did all it shows is that plaintiff understood and was dissatisfied with the terms of the release. In a recent case, the California Court of Appeal granted a motion for summary judgment because "[plaintiffs] presented no evidence showing that they labored under any physical or mental disability that might have furnished an opportunity for overreaching by their insurer.... Nor did they declare that they were unable to comprehend the plain language of the release agreement. There was no evidence indicating that the [plaintiffs] placed such trust and confidence in their insurer that there were not dealing at arm's length when they negotiated the settlement and release." *Edwards v. Comstock Ins. Co.*, 205 Cal.App.3d 1164, 252 Cal.Rptr. 807, 809 (1988) (citations omitted). In other words, no misunderstanding as to the terms of the release resulted in plaintiff's signing it. That is the case here as well: plaintiff was aware of the meaning of the terms of the release,

---

**2.** This is an exception to the rule that parol evidence is admissible to show fraud: such evidence is admissible if the alleged fraud is in the form of an independent promise, or concerns the scope of the contract. *Pendergrass,* 48 P.2d at 661.

as his deposition testimony shows. He only signed it because, he claims, he understood from Walls that it would not be enforced. Walls' statement is not admissible under *Pendergrass* and therefore there is no evidence of any deception.

For the above-stated reasons, the Court holds that the release bars all three causes of action against defendants. Defendants' motion for summary judgment is granted in its entirety.