Reuel S. KOHLER, et al., Plaintiffs and Respondents,

v.

GARDEN CITY, Defendant and Appellant.

BIRDIE PROPERTIES, Plaintiff, Respondent and Cross-Appellant,

v.

GARDEN CITY, Mack J. Madsen and Leola S. Madsen, Defendants, Appellants and Cross-Respondents.

No. 17346.

Supreme Court of Utah.

Dec. 10, 1981.

Gordon J. Low and Herm Olsen of Hillyard Low & Anderson, Logan, for Garden City.

James C. Jenkins, Logan, for Madsen.

Bryce E. Roe, David E. Leta, and Edwin Barnes, Salt Lake City, for Kohler.

David Lloyd, Salt Lake City, for Birdie Properties.

HALL, Chief Justice:

This appeal involves a claimed public right-of-way by the Town of Garden City across two different tracts of land owned by plaintiffs Kohler and Birdie Properties. The cases were consolidated at trial.

Garden City is located on the shore of Bear Lake in Rich County. The real property involved consists of two non-contiguous tracts on the edge of the lake. The lake is to the east and the main street of Garden City is on the west of these properties. Garden City claims rights-of-way from Main Street to the water's edge. Garden City stipulated that there was no right-of-way of record, but sought to prove its interest by the "historical understanding of the residents."

As to the Kohler property, Garden City claimed a right-of-way of 99 feet across the south edge of the property. If it were established, the alleged right-of-way would be an extension of First South Street, which is paved on the west side of Main Street. Kohlers sued to quiet title, seeking damages of $1,000 for trespass against Garden City. Just before trial, Kohlers moved to amend their complaint to claim damages of $25,000. Garden City had proceeded to grade the "Kohler road" after the complaint was filed. Kohlers alleged that the grading had destroyed the Kohlers' drainage system, thereby damaging the remainder of their property.

At trial, several witnesses testified that they had used a path on the south of Kohlers' property for access to the water when they were children. No witnesses established the width of the path. Kohlers' surveyor, one Wilson, who surveyed the property in 1967, testified that at the time of the survey there was "somewhat of a path," "not a very marked path" but that it was *south of Kohlers' southern boundary.*

As to the Birdie property, Garden City claimed a 66-foot right-of-way across the north portion of the property. If established, this would be an extension of Second North Street. This "road" was much more visible. It had been paved to the brow of a hill, east of which lies Birdie's property. Past the brow of the hill, the road was oiled in part, but was broken, and was between 12 and 20 feet wide. Closer to the water, the road disappeared into weeds.[1]

Birdie (through its partners Gerald Davis and Jack Scott) purchased its property from Mack and Leola Madsen in 1978. Davis and Scott were aware that Garden City claimed a right-of-way on the north edge of the property, and that they took the property subject thereto. Davis testified at trial that he thought the right-of-way was only 20 feet wide since the oiled portion was no wider than that. Furthermore, Davis testified that he believed that the right-of-way followed the property line, in that half of it would be on the property to the north. Scott testified that the realtor from whom they purchased the property represented that the marker of the property line was located in the middle of the oiled roadway beneath some debris. Birdie also sued to quiet title and joined the Madsens, alleging fraud and misrepresentation in that they knew of Garden City's claim across the property and did not reveal that information to Birdie at the time of purchase.

After trial, the court ruled as follows:

(1) In the Kohler case, the evidence showed limited public use, but that such use was south of the Kohler property. The court also awarded damages to Kohlers in the amount of $5,700 (designated as the direct cost of improvements destroyed by Garden City's encroachments).

(2) In the Birdie case, the evidence showed limited public use, but of a width of only 20 feet with the center of such right-of-way in the center of the oiled roadway (hence entirely upon Birdie's property, and bisecting it into two parts). The court found no fraud or misrepresentation on the part of the Madsens, and dismissed the claim as to them.

Garden City appeals the decision in both cases. Kohlers respond, seeking affirmance of the judgment in their favor. Birdie responds and cross-appeals, seeking reversal of the judgment that its land is encumbered by a public highway, and that failing, reversal of the judgment dismissing its complaint against Madsens. Madsens respond thereto, seeking affirmance of the judgment in their favor.

Garden City first contends that the court erred in excluding as evidence exhibit 59. This was allegedly a "survey plat prepared at the behest of the town fathers of the unincorporated town of Garden City." Garden City claims that the purpose of the "map" was to demonstrate the historical belief and understanding of the landowners, residents, and the officers of the town and to corroborate the testimony of witnesses. The exhibit was excluded by the court upon objection of Kohlers and Birdie because of an absence of foundation. The court sustained this objection, stating as follows: "... [T]here's no foundation as to who originated it, whether it has any official standing, [and] whether it's a public record of any kind."

■ On appeal, Garden City argues that the map should have been admitted under Rule 63(27), Utah Rules of Evidence, as an exception to the hearsay rule, or under Rule 67, Utah Rules of Evidence, as an ancient document. Kohlers correctly point out that the map was ruled inadmissible because of a lack of foundation. The purported bases of

---

1. At trial, it was discovered that the north boundary of the Birdie property is 20 feet north of the road, so that the road bisects Birdie's property.

admission urged on appeal were never urged at trial; hence, the point is without merit. The general rule is as follows:

If counsel specifies a purpose for which the proposed evidence is inadmissible and the judge excludes, counsel cannot complain of the ruling on appeal though it could have been rightly admitted for another purpose.

*McCormick on Evidence*, West Publishing Company, 1972, p. 112.

■ Notwithstanding the foregoing and assuming *arguendo* that the point may be raised under either of Garden City's theories of admissibility, foundation is crucial. At trial, there was no evidence that the exhibit was a survey map or that it was prepared at the behest of the city fathers. There was no evidence as to who prepared the map, or for what purpose. Lavon Sprouse, Garden City's own witness, testified that no one knew who made the map but that it was at least 80 years old and had "been all over the country." The trial court properly excluded the exhibit for lack of foundation.

■ Garden City next contends that the evidence is insufficient to extinguish rights-of-way historically established. The question here is not extinguishment of a right-of-way by the private owner, but rather establishment of a dedicated roadway by the municipality. Garden City had the burden of showing, by clear and convincing evidence, continuous public use.[2] We defer to the trial court when it comes to weighing the evidence. As stated in *Charlton v. Hackett*:[3]

In considering the attack on the findings and judgment of the trial court it is our duty to follow these cardinal rules of review: to indulge them a presumption of validity and correctness; to require the

appellant to sustain the burden of showing error; to review the record in the light most favorable to them; and not to disturb them if they find substantial support in the evidence.

■ When so viewed, the evidence adduced at trial (and as abstracted *supra*) is sufficient to sustain the findings, conclusions and judgment of the trial court.

■ Garden City also contends that the court erred in granting $5,700 damages to the Kohlers without affording Garden City the opportunity of rebutting the evidence.[4] Following the filing of the supplemental complaint and at the start of trial, Garden City indicated that it would "request an opportunity to rebut the evidence relative to damage." The court replied, "We'll make the determination, of course, when you see what the evidence is as to damages, and if you need additional time we'll grant it.... [Garden City has] the opportunity after hearing the testimony, if they feel they need time to rebut it." Garden City did not request an opportunity to rebut the evidence on damages; neither did it seek relief from or an amendment to the judgment as it might have done under Rules 59 and 60, Utah Rules of Civil Procedure. Having failed to so raise the issue below, Garden City is precluded from raising it on appeal.[5]

■ In its cross-appeal, Birdie too challenges the sufficiency of the evidence. As explained *supra* in response to Garden City's evidentiary challenge, the weighing of evidence is best left to the fact-finder.[6] There was clear and convincing evidence adduced at trial which supports the finding that a 20-foot-wide right-of-way had been established by continuous public use over the years.[7]

---

**2.** *Petersen v. Combe*, 20 Utah 2d 376, 438 P.2d 545 (1968).

**3.** 11 Utah 2d 389, 360 P.2d 176 (1961).

**4.** No challenge is made as to the adequacy of proof presented by Kohlers which would support the damage award.

**5.** *Heath v. Mower*, Utah, 597 P.2d 855 (1979); *In re Estate of Ekker*, 19 Utah 2d 414, 432 P.2d 45 (1967).

**6.** See also, *Thurman v. Byram*, Utah, 626 P.2d 447 (1981).

**7.** In its statement of facts, Birdie admits to a certain amount of public use, and the testimony

Likewise, there is no merit to Birdie's alternative claim against the Madsens for misrepresentation. In *Cheever v. Schramm*,[8] this Court held as follows:

We have in the past stated that one claiming fraud must establish by clear and convincing evidence all of the following: 1) that a representation was made; 2) concerning a presently existing material fact; 3) which was false; 4) which the one making the misrepresentation either a) knew to be false, or b) made recklessly knowing he had insufficient knowledge upon which to base such representation; 5) for the purpose of inducing the other party to act upon it; 6) that the other party acting reasonably and in ignorance of its falsity; 7) did in fact rely upon it; 8) and was thereby induced to act; 9) to his injury and damage. We agree with the trial court [sic] defendants have not met their burden of establishing these elements by clear and convincing evidence, which clearly preponderates against the findings of the trial court.

Citing *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (1952); *Oberg v. Sanders*, 111 Utah 507, 184 P.2d 229 (1947).

■ In the instant case, the evidence is that Gerald Davis inspected the property prior to entering into the contract to purchase and was shown the southeast corner marker which was accurately set. He saw the oiled roadway in question and was informed that Garden City claimed a right-of-way in the roadway. The contract itself put Birdie on notice that Garden City had some claim to the property. The mere fact that the north boundary was further north than expected does not constitute misrepresentation on the part of the Madsens. The court's finding that there was no misrepresentation on the part of the Madsens and that Birdie knew of Garden City's claim is amply supported by the evidence.

The lower court's findings and judgment are hereby affirmed. No costs awarded.

of both Birdie partners was that they thought the right-of-way might be 20 feet in width. The contract by which Birdie purchased the property shows title "subject to the rights of Garden

HOWE and OAKS, JJ., and DON V. TIBBS, District Judge, concur.

STEWART, J., concurs in the result.

City (if any) in and to the street on the North part of this property."

8. Utah, 577 P.2d 951 (1978).