Patti SIMONSON, Plaintiff
and Appellant,

v.

Robert Gordon TRAVIS, Defendant
and Respondent.

No. 19148.

Supreme Court of Utah.

Nov. 6, 1986.

Richard W. Brann, Ogden, for plaintiff and appellant.

**1000**

Wendell E. Bennett, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiff Patti Simonson appeals from a judgment dismissing her complaint against defendant Robert Gordon Travis for damages. The dismissal was based on a written release which plaintiff had given defendant.

The complaint arose out of an intersection accident in Roy, Utah. Plaintiff's vehicle collided with defendant's vehicle when defendant apparently failed to yield the right of way in making a left-hand turn. Defendant's insurer, State Farm Insurance Co., noted probable liability and estimated the damage to plaintiff's automobile to be $622.45. About five weeks subsequent to the accident, plaintiff went to the State Farm claims office to pick up a check for $622.45. A secretary at the office requested that she sign a release form. Plaintiff testified that she read the release and, while she did not understand it fully, it appeared to her that she was releasing defendant from liability for her personal injuries and medical expenses as well as for property damage. Since she was then still being treated by her physician for her injuries, she further testified that she did not want to release any claim she might have for personal injury. Consequently, she declined to sign the release and accept the check.

The following day, Homer Randall, an insurance adjuster for State Farm, telephoned plaintiff and inquired why she had not signed the release. She testified that he told her that the release was "just for her car, just for her property." Randall testified that although he remembered making the call to plaintiff, he did not remember the substance of the conversation. He testified that he knew she was seeing a doctor and that five weeks after an accident "sometimes you can and sometimes you cannot estimate medical expenses." He testified that he "did not think" that he represented to plaintiff that the release was for property damage only

because "every time we've done one of them and when I've taken one of them, I've always indicated that this would take care of everything with the exception of the medical bills their insurance company paid for." Although he had no memory of the event, he testified that "it's just standard procedure that we've told them all, that this would release everything with the exception of the medical bills that we would pay to the other company." He testified that if he had been settling only property damage, another type of form would have been utilized rather than the general release form used in this instance.

The next day, plaintiff went back to the State Farm office and signed the general release form that she had previously refused to sign. She testified that she did so because she trusted Mr. Randall and did not think he would lie to her. On the printed release form signed by plaintiff, Mr. Randall had added the following additional paragraph which had been typed on by his secretary:

> The undersigned is not releasing any part of his claim for which he has received or will in the future receive payments under personal injury protection insurance available to him. The present or future subrogation rights of any insurer for making payments under such coverage is [sic] reserved.

It is not clear when this paragraph was added except that it was present when plaintiff signed the form. Several weeks later, State Farm paid plaintiff an additional $31.50 to cover rental of an automobile while her car was being repaired.

Plaintiff had no further contact with State Farm until about two years later when she filed the instant action against defendant to recover for past and future medical treatment, damage to her automobile, loss of wages, and general damages. Defendant answered the complaint and as an affirmative defense alleged that plaintiff had executed a full, final, and complete release of all of her claims and demands against defendant and could not recover any further amounts. No further plead-

ings were filed by plaintiff. The case went to trial where plaintiff attacked the release on two primary grounds: first, that she had been fraudulently induced to sign the release and, second, that it was ambiguous and should be interpreted in her favor. After hearing the evidence surrounding the execution of the release, the trial court ruled that plaintiff had not met her burden of proof in her assertion of "any defense to said general release" and dismissed the complaint with prejudice. Plaintiff brings this appeal.

Plaintiff contends that under an accepted rule of construction, language which is added to a printed form prevails over the standard printed language. Applying that rule to the first sentence of the typed paragraph, she argues that the sentence contains an unequivocal and unambiguous reservation of her personal injury claim. That sentence reads: "The undersigned is not releasing any part of his claim for which he has received or will in the future receive payments under personal injury protection insurance available to him." Defendant counters that the first sentence means only that plaintiff is not releasing any claim to present or future benefits payable under her own no-fault insurance, also known as personal injury protection insurance. Defendant further argues that the second sentence of the paragraph reserves to plaintiff's no-fault insurance carrier the right of subrogation against State Farm. The second sentence reads: "The present or future subrogation rights of any insurer for making payments under such coverage is [sic] reserved." Homer Randall, State Farm's adjuster, testified that he had been instructed by his company to add the typed paragraph to the printed general release. Apparently before this Court decided *Allstate Insurance Co. v. Ivie*, 606 P.2d 1197 (Utah 1980), the concept prevailed that a no-fault carrier had subrogation rights against the liability insurance carrier of the driver at fault.

■ Looking at the first sentence of the typed paragraph, no explanation has been offered by defendant, and we are at a loss to understand why in a release given to State Farm it would be necessary for plaintiff to reserve her rights against her own no-fault insurance carrier. This lack of explanation supports plaintiff's contention that the first sentence was intended to preserve her claim for personal injuries against defendant. At the very minimum, we believe that the first sentence is ambiguous both as to its meaning and the reason for its insertion into this release. The first sentence purports not to release any claim "under personal injury protection insurance available" to her. In this case, two personal injury insurances were "available" to plaintiff. Since these words appeared in a release given to State Farm, they arguably referred to insurance provided by State Farm, lest their insertion would be totally unnecessary. If State Farm intended the words "personal injury protection insurance" to mean only plaintiff's own no-fault coverage, it was incumbent upon it to clearly so state. Words in an agreement are construed against the party employing them. That rule must be invoked against State Farm here.

This inherent ambiguity in the first sentence was not clarified by the explanation given by Randall to plaintiff. He testified that although he had no specific memory of what he may have said to plaintiff, "it's just standard procedure that we've told them all, that this would release everything with the exception of the medical bills that we would pay to the other company." Taking that testimony in a light most favorable to defendant, no one could seriously contend that it was a clear explanation. It appears to be a representation that plaintiff's medical expenses would be taken care of or that they would be unaffected by the release. While Randall may have been laboring under the assumption that plaintiff's no-fault insurance would cover all medical expenses that she might incur, he did not attempt to explain that the release did in fact release the insured from liability for expenses that exceeded plaintiff's no-fault coverage. Thus, we conclude that Randall's explanation did nothing to clarify the ambiguity in the first sentence.

██ The cases which deal with when a general release can be voided because of fraud, mutual mistake, unilateral mistake, or on other grounds are legion. They are not all harmonious. However, one principle that permeates all of the cases which we have examined is that a release, to be enforceable, must at a minimum be unambiguous, explicit, and unequivocal. *Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734 (Minn. App.1985); *Carpenter International, Inc. v. Kaiser Jamaica Corp.*, 369 F.Supp. 1138 (Del.1974) (applying California law); *Virginia Impression Products Co. v. S.C.M. Corp.*, 448 F.2d 262 (4th Cir.1971); *McLain v. Pernell*, 255 Md. 569, 258 A.2d 416 (Md. App.1969); *Thigpen v. Guarisco*, 197 So.2d 904 (La.App.1967); *Clark v. Brewer*, 329 S.W.2d 384 (Ky.App.1959). Not only were the words of the release ambiguous and the adjuster's explanation insufficient to clarify that ambiguity, plaintiff here was free from fault in signing the release. When given the release originally, she read it carefully and detected that it was a full and complete release to which she was not agreeable. She was under a doctor's care and refused to sign a release which would jeopardize her recovery of medical expenses. She thereafter had a conversation with Randall in which he attempted to explain the release to her and following which she signed. While the testimony is conflicting as to what was said, Randall's own testimony as to what was said does not aid defendant.

██ Under these circumstances where plaintiff made a diligent effort to ascertain the meaning of the release she was asked to sign and defendant was wholly responsible for the ambiguity and the subsequent ambiguous explanation, it would be inequitable to enforce the release against plaintiff. *Jordan v. Guerra*, 23 Cal.2d 469, 144 P.2d 349 (1943); *Davis v. Davis*, 256 N.C. 468, 124 S.E.2d 130 (1962); *Household Finance Co. v. Shamley*, 140 A.2d 183 (D.C. 1958). Plaintiff should not have to bear the risk of understanding State Farm's intent which was couched in its own ambiguous language. One court invalidated a release because imprecise language was used which was interpreted differently by the contracting parties, preventing the necessary "meeting of the minds" to form a binding agreement. *Noroski v. Fallet*, 2 Ohio St.3d 77, 442 N.E.2d 1302 (1982). The result we here reach is in harmony with the rule stated in 66 Am.Jur.2d *Release* § 55: "Courts of equity will restrict a general release to the thing or things intended to be released. As on a release of all demands, when some particular demand was in view, the court of chancery will not allow the releasee to take advantage of the general words to defeat the collection of a demand not then in the minds of the parties." (*Citing Butcher v. United Electric Coal Co.*, 174 F.2d 1003 (7th Cir.1949).) In the instant case, plaintiff, in view of the ambiguous language employed in the release, cannot be charged with intending to release her claim for personal injuries.

██ Defendant further contends that plaintiff cannot maintain this action because she did not tender to him, before the commencement of the action, the $622.45 which was paid to plaintiff by defendant's insurer. The necessity of a tender was fully addressed in *Reliable Furniture Co. v. Fidelity & Guarantee Insurance Underwriters, Inc.*, 16 Utah 2d 211, 398 P.2d 685 (1965), and determined adversely to defendant. Furthermore, the $622.45 was the exact amount of plaintiff's property damage to which she was admittedly entitled. Her claim for property damage was fully compromised and settled by the giving of the release, and she is entitled to nothing more on that claim.

That part of the judgment holding that the release is a bar to plaintiff's claim for personal injuries is reversed, and the case is remanded to the trial court for further proceedings. Costs awarded to plaintiff.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (dissenting):

I cannot join the majority. In reversing the trial court's finding that plaintiff has

not carried her burden of showing the release to be invalid, the Court has exceeded its proper function. I, too, have sympathy for plaintiff. However, where there is conflicting evidence and the trial court has resolved it against a party, it is not for us to redetermine the matter unless there is no substantial record evidence to support the findings. *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985); *Sharpe v. American Medical Systems, Inc.,* 671 P.2d 185, 187 (Utah 1983); *Kohler v. Garden City,* 639 P.2d 162, 165 (Utah 1981); *Thurman v. Byram,* 626 P.2d 447, 448–49 (Utah 1981); *Knight v. Leigh,* 619 P.2d 1385, 1387 (Utah 1980).

Here, the release was ambiguous and, therefore, parol evidence was properly considered in determining the intent of the parties. *Cf. Armijo v. Foundation Reserve Insurance Co.,* 75 N.M. 592, 595, 408 P.2d 750, 752 (1965). Ambiguity, however, does not equate with invalidity. After demonstrating ambiguity, the burden was still on plaintiff to show by clear and convincing evidence that the release was invalid. *Maxfield v. Denver & Rio Grande Western Railroad,* 8 Utah 2d 183, 185, 330 P.2d 1018, 1019 (1958). There is ample record evidence to support the trial court's finding that plaintiff did not carry this burden. Therefore, I would affirm.