**Suzan PALMER, individually and on Behalf of her son Jeremy Freier, a minor, Plaintiff and Appellant,**

**v.**

**James DAVIS, Justin Anderson, and Keith Schrenk, Defendants and Appellees.**

**Case No. 900109–CA.**

Court of Appeals of Utah.

March 7, 1991.

Glen A. Cook, Robert J. DeBry & Associates, Salt Lake City, Gordon K. Jensen (argued), Goicoechea Law Offices—West Valley, West Valley City, for plaintiff and appellant.

Robert L. Jeffs (argued), Provo, for defendants and appellees.

Before BILLINGS, GARFF and RUSSON, JJ.

## OPINION

BILLINGS, Judge:

Suzan Palmer brought this negligence action, individually and on behalf of her minor son, Jeremy Freier, against defendant James Davis for permanent blindness suffered by Freier when he was run over by a truck while working on a farm with Davis. Appellee filed a motion for summary judgment claiming that appellant's action was barred by the exclusive remedy provision of the Utah Workers' Compensation Act ("the Act") and by a settlement agreement ("the release") signed by the appellant when she settled her claims against appellee's employer. The trial judge granted appellee's motion for summary judgment on both grounds, dismissing appellant's claim. Appellant appeals from that judgment. We affirm.

On July 15, 1985, Jeremy Freier was working to satisfy a Juvenile Court-ordered work requirement on a farm owned by Kannarra Partnership ("Kannarra") and Manza Investment, Inc. ("Manza") and operated by Keith Schrenk. Freier was helping James Davis, Justin Anderson and Eldon Reeves pick up rocks from a field and put them in the back of a truck. While working in the field, Freier was run over by a truck driven by Anderson. As a result of the accident, Freier suffered total blindness. Appellant settled her claims arising from the accident against the employer group for $225,000. The release read, in pertinent part:

> [T]he undersigned ... does by these presents release, acquit and forever discharge William Borders, Kannarra Partnership, its individual partners, Manza, Inc., its officers and directors, Keith Schrenk, Justin Anderson, National Farmers Union Property and Casualty Company, *their agents, servants, employees*, administrators, successors and assigns ... from any and all liabilities, claims, demands, causes of action and damages related to or associated with that certain incidence that occurred on or about July 15, 1985, on a farm owned by Kannarra Partnership and Manza, Inc.....

(emphasis added).

The release also specifically mentioned appellee Davis by stating:

> The undersigned individually and for and on behalf of herself and the minor Jeremy Freier *reserves all of their rights and claims against James Davis in relation to the above-described claim except as he may be an employee of William Borders, Kannarra Partnership, Manza Investments, Inc., Justin Anderson or Keith Schrenk.*

(emphasis added).

Subsequently, appellant brought this negligence action against Davis. The trial judge granted summary judgment, dismissing appellant's claims against Davis, holding the action was barred by the exclusive remedy provision of the Act and by the release. Appellant appeals this ruling,

claiming her action against Davis is not barred by the exclusive remedy provision of the Act due to the failure of the employer to provide workers' compensation insurance. Additionally, appellant contends the release does not affect her ability to pursue her claim against Davis.[1]

Appellant offers several arguments to support her claim that the release her lawyer drafted and she signed does not bar her claim against Davis. These arguments include: (1) Davis was not an "employee" under the terms of the release at the time of the accident and, therefore, is not released from liability; (2) Davis was not a party to the release and, therefore, cannot sue to enforce the contract; (3) Davis did not personally give consideration to support the release and, therefore, cannot sue to enforce it; and (4) the parties to the release intended to reserve appellant's right to pursue a claim against Davis. We address each argument in turn.

## I. STANDARD OF REVIEW

" 'A grant of summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " *Whatcott v. Whatcott*, 790 P.2d 578, 580 (Utah Ct.App.1990) (quoting *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969 (Utah 1989) ). Accordingly, "[s]ummary judgment should be granted . . . 'only when it is clear from the undisputed facts that the opposing party cannot prevail.' " *Alford v. Utah League of Cities and Towns*, 791 P.2d 201, 204 (Utah Ct.App. 1990) (quoting *Lach v. Deseret Bank*, 746 P.2d 802, 804 (Utah Ct.App.1987)). "When reviewing an appeal from summary judgment, [an appellate court must] construe

the facts and view the evidence in the light most favorable to the losing party." *Id.* Additionally, "in deciding whether the trial court properly granted summary judgment as a matter of law to the prevailing party, we give no deference to the trial court's view of the law; we review it for correctness." *CECO*, 772 P.2d at 969.

## II. DAVIS AS AN EMPLOYEE

▇▇▇ Appellant claims the plain and unambiguous language of the release reserved their claim against Davis if he was not an employee. Appellant thus argues that her claim against Davis is not barred because Davis was not an employee of the settling parties and, therefore, was not protected by the release. We agree that if Davis was not an employee, the release does not protect him.

Black's Law Dictionary defines the word "employee" as "[a] person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is performed." *Black's Law Dictionary* 471 (5th ed. 1979). This definition was echoed by the Utah Supreme Court in *Western Casualty & Sur. Co. v. Marchant*, 615 P.2d 423, 426 (Utah 1980), in which the court stated that "[i]n general, it can be said that an employee is one who is hired for compensation, for a substantial period of time, to perform duties wherein he is subject to a comparatively high degree of direction and control by the one who hires him."[2]

Measured against this standard, the undisputed facts before the trial court on summary judgment establish that Davis was an employee of the settling parties.

---

1. Because we conclude the trial judge was correct in ruling the release barred appellant's claim, we do not reach the alternative theory relied upon by the trial judge that the exclusive remedy provision of the Act bars appellant's claim.

2. Appellant claims we should interpret the term "employee" included in the release not under the aforestated principles but rather with reference to the Act. As support for using the definition of "employee" from the Act to define "em-

ployee" as used in the release, appellant cites *Quagliana v. Exquisite Home Builders, Inc.*, 538 P.2d 301 (Utah 1975) for the proposition that insofar as ordinances or statutes are applicable to a contract, the ordinance or statute is, by operation of law, an implied term of contract. Although this general rule may be correct, it has no application to the instant case because the Act has no relation to Davis' status as an employee for purposes of the release; the release is controlled by contract law, not the Act.

In sworn testimony, Davis stated that he was hired during the summer of 1985 to work for Keith Schrenk as a ranch hand. According to Davis, he was paid $300 per month with the possibility of earning bonuses. Additionally, Davis stated that he and all the employees on the farm were under the supervision of Keith Schrenk.

Appellant introduced no facts before the trial judge to refute this evidence of Davis' employee status. In fact, on appeal appellant implicitly admits that Davis was an employee by referring to him in her brief as "the negligent employee."[3] In sum, we conclude the undisputed facts before the trial court established that Davis was an employee within the meaning of the release.

## III. THIRD–PARTY BENEFICIARY

■ Next, appellant asserts that Davis was not a party to the release and, therefore, cannot enforce the release. Davis responds that he was an intended third-party beneficiary to the release.

For a third party to have enforceable rights under a contract, that party must be an intended beneficiary of the contract. *Ron Case Roofing & Asphalt v. Blomquist*, 773 P.2d 1382, 1386 (Utah 1989). In Utah, "[a]s a general rule, the rights of third-party beneficiaries are determined by the intentions of the parties to the subject contract." *Hansen v. Green River Group*, 748 P.2d 1102, 1104 (Utah Ct.App.1988). The intent of the contracting parties to confer a separate benefit to the third party must be clear and is to be determined from the terms of the contract as well as the surrounding circumstances. *Ron Case Roofing*, 773 P.2d at 1386. " 'Where it appears from the promise or the contracting situation that the parties intended that a third party receive a benefit, then the third party may enforce his rights in the courts....' " *Hansen*, 748 P.2d at 1105 (quoting 2 S. Williston, *A Treatise on the Law of Contracts* § 356 (1981)).

In the instant case, the promissory words in the release are directed to employees, such as Davis. The relevant portion of the release purported to release "agents, servants [and] employees." This language clearly indicates that employees were intended beneficiaries of the release; these individuals were explicitly and unambiguously named in the contract. Having previously concluded that Davis was an employee, we conclude that Davis falls within the class of intended beneficiaries. Consequently, appellant's assertion that Davis cannot enforce the release because he was not a party to the contract is without merit.[4]

## IV. INTERPRETATION OF THE RELEASE

■ Finally, appellant argues that regardless of the express language of the release, the intent of the parties to the contract was not to release Davis but only to cut off the other released parties' liability under the doctrine of respondeat superior. In this regard, appellant contends the trial court committed error in finding the relevant portion of the release unambig-

---

**3.** In her brief, appellant also states that "[a]dmittedly, a situation like this one against Davis where an *employee* is pursued without making a claim against the employer for vicarious liability, is rare." (emphasis added).

**4.** Appellant also asserts that Davis cannot enforce the release because he personally gave no consideration to support the contract. This assertion is without merit because the consideration for a third-party beneficiary contract "practically always is given by the promisee and practically never by the third party. In nearly all cases, therefore, if the third party is given an enforceable right against the promisor, this right comes to him at no cost to himself." 4 A. Corbin, *Corbin on Contracts* § 774 (1972). This position was adopted by the Utah Supreme Court in *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497 (Utah 1980), in which the court defined third-party beneficiaries as " 'persons who are recognized as having enforceable rights created in them by a contract to which they are not parties *and for which they gave no consideration.*' " *Id.* at 506 (citation omitted) (emphasis added). Accordingly, the source of consideration is irrelevant in determining whether a third-party beneficiary can enforce a contract under Utah law.

In the instant case, appellant was given $225,000 as consideration. The fact that Davis, a third-party beneficiary, did not personally give this consideration is immaterial.

uously barred the present action against Davis.

We look to contract law to answer appellant's assertion. We first must determine whether the release provisions relating to appellant's claims against Davis are ambiguous. "Whether an ambiguity exists in a contract is a question of law which we review for correctness." *Jarman v. Reagan Outdoor Advertising,* 794 P.2d 492, 494 (Utah Ct.App.1990). Moreover, "[q]uestions of whether a contract is ambiguous because of uncertain meaning of terms, missing terms, or facial deficiencies are questions of law that must be determined by the court before parol or extrinsic evidence may be admitted to clarify the contractual intent of the parties." *Fitzgerald v. Corbett,* 793 P.2d 356, 358 (Utah 1990). *See also* Utah R.Civ.P. 52(a).

"[T]he settled rule [for] interpreting a contract [is to] first look to the four corners of the agreement to determine the intentions of the parties. The use of extrinsic evidence is permitted only if the document appears to incompletely express the parties' agreement or if it is ambiguous in expressing that agreement." *Ron Case Roofing,* 773 P.2d at 1385 (citations omitted); *see also John Call Eng'g v. Manti City Corp.,* 743 P.2d 1205, 1207 (Utah 1987); *Nixon and Nixon, Inc. v. John New & Assoc.,* 641 P.2d 144, 146 (Utah 1982). "Contract provisions are not rendered ambiguous merely by the fact that the parties urge diverse interpretations." *Jones v. Hinkle,* 611 P.2d 733, 735 (Utah 1980).

Appellant claims the meaning of the passage in the release which reserves her rights against Davis is ambiguous. Because of this alleged ambiguity, appellant urges this court to consider extrinsic evidence (the parties' unexpressed intentions) and interpret this passage to mean that appellant merely agreed to pursue recovery directly from Davis and not from the released parties under the doctrine of respondeat superior.

The trial court did not look to extrinsic evidence but concluded the unambiguous language of the release barred appellant's claim. We agree. If appellant intended to agree to pursue recovery directly from Davis and not from the released parties under the doctrine of respondeat superior, she easily could have stated that in the release. This court cannot rewrite the contract because appellant failed to include language to protect her rights. As stated by Professor Corbin, "it certainly is not proper to reform the contract or to put in new provisions merely because one of the parties is disappointed in the ... outcome." 3 A. Corbin, *Corbin on Contracts* § 541 (1972). The Utah Supreme Court has echoed Professor Corbin's statement, noting that "[a] court will not ... make a better contract for the parties than they have made for themselves," adding that "[a]n express agreement or covenant relating to a specific contract right excludes the possibility of an implied covenant of a different or contradictory nature." *Rio Algom Corp. v. Jimco, Ltd.,* 618 P.2d 497, 505 (Utah 1980), at 505 (citation omitted). The release, by its clear and unambiguous language, releases Davis from liability for his actions taken while he was an employee.

## CONCLUSION

Davis' status as an employee was undisputed on summary judgment. Because Davis was an employee of the settling parties, the release, in clear and unambiguous language, bars appellant's claims against him. We therefore affirm the trial court's summary judgment dismissing appellant's claims against Davis.

GARFF and RUSSON, JJ., concur.