Harold **KRAUSS**, Plaintiff and Appellant,

v.

**UTAH STATE DEPARTMENT OF TRANSPORTATION**, Defendant and Appellee.

No. 920680–CA.

Court of Appeals of Utah.

April 19, 1993.

Jeffrey D. Eisenberg and Michael E. Blue, Salt Lake City, for plaintiff and appellant.

Jan Graham and Debra J. Moore, Salt Lake City, for defendant and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff in a personal injury action appeals an adverse jury verdict and the trial court's denial of his motions for a directed verdict and judgment notwithstanding the verdict. The primary issue is whether a broadly phrased release, which does not name defendant, should be deemed to have released defendant from liability. We hold it does not and remand for a new trial.

## FACTS

On May 3, 1986, appellant Harold Krauss, a Colorado resident, was sleeping in the back seat of a car he borrowed from his parents when the driver fell asleep. The car ran off I–70 in southern Utah and crashed, resulting in Krauss's permanent paraplegia. Krauss sued the State of Utah, specifically naming the Utah Department of Transportation (UDOT), under a theory of negligent design and location of

the guardrail that the car struck. On March 13, 1987, Krauss, with advice of his attorney, signed a document releasing his parents, the driver, their insurance companies and "any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and all" causes of action in exchange for $200,000, the liability policy limits for the driver and owners of the car. UDOT paid no consideration for the release and did not participate in the negotiations incident to the release. Indeed, UDOT was apparently unaware that such negotiations had taken place.

Before trial, UDOT claimed that Krauss released it from liability by signing the release quoted above and moved for summary judgment on that basis. The trial court denied UDOT's motion. After a four-day jury trial, UDOT and Krauss each filed motions for a directed verdict, which the court rejected. The jury received a special verdict form, the first question of which asked jurors whether Krauss "discharged or released defendant State of Utah from liability, if any, for his injuries." The remaining eight interrogatories required the jury to assess whether UDOT was negligent, and, if so, how much Krauss was entitled to as damages. The special form instructed the jurors that if they found Krauss did in fact release UDOT from liability, they should not answer the remaining interrogatories. The jury found that Krauss released UDOT from liability, did not answer any further interrogatories, and returned its verdict to the court. Krauss moved for judgment notwithstanding the verdict, which the court denied.

On appeal, Krauss asserts the release contained boilerplate language which did not discharge UDOT from liability because it was not specifically named. Krauss argues such specificity is required under Utah Code Ann. § 78-27-42 (1992), which provides: "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides."

Krauss also contends that the trial court erred by (1) denying his motion for a directed verdict, (2) allowing the release issue to go to the jury, and (3) denying his motion for judgment notwithstanding the verdict. Ultimately, because these issues distill into a claim that there was insufficient evidence to support the jury's verdict, we discuss them in that context within.[1] *Cerritos Trucking Co. v. Utah Venture No. 1,* 645 P.2d 608, 611 (Utah 1982).

## APPLICATION OF SECTION 78-27-42

■ Krauss's initial claim, that Utah Code Ann. § 78-27-42 (1992) precludes UDOT from availing itself of the release, requires this court to interpret that statutory provision. Interpreting a statute is purely a matter of law, and we therefore accord no deference to the trial court's interpretation. *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990); *Lounsbury v. Capel,* 836 P.2d 188, 192 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992).

■ The parties offer three lines of cases from other jurisdictions as justification for their preferred statutory construction. These cases can be roughly categorized as following either the specific identity rule, the intent rule, or the four corners rule. The "specific identity rule," Krauss's preferred construction, provides that "the release of one tortfeasor does not discharge other tortfeasors unless the latter are named in the release or are otherwise specifically identifiable from the face of the instrument." *Moore v. Missouri Pac. R.R.,* 299 Ark. 232, 773 S.W.2d 78, 80–81 (1989). UDOT prefers what it terms the "four corners rule," whereby courts have determined that language similar to the release in this case is unambiguous as a matter of law and that the release applies to unnamed parties. *See, e.g., Mussett v. Baker Material Handling Corp.,* 844 F.2d 760, 761–62 (10th Cir.1988). Finally, under the "intent rule," "the scope of a general release is dependent upon the intent of the

---

1. The State, for the first time on appeal, also raises an issue concerning Krauss's compliance with the notice requirements of Utah Code Ann. § 63-30-12 (1989). We have considered the arguments in the context of this case and conclude they have no merit. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989).

parties who negotiated the release." *Neves v. Potter*, 769 P.2d 1047, 1053 (Colo. 1989). Thus, alleged tortfeasors who were not parties to the release must prove that the parties to the agreement intended them to be beneficiaries of the release. *Id.* While neither party prefers the intent rule, both parties claim victory with its application. Krauss claims the release is ambiguous and that UDOT failed to prove any intent to release it. UDOT, on the other hand, claims the words of the release are clear and demonstrate an intent to release it.

We eschew the notion that any of these "special" rules provides a unique principle for interpreting releases under the pertinent statute. We adhere instead to the straightforward concept that releases are contractual provisions and should be interpreted according to well developed rules of contract interpretation. *See, e.g., Simonson v. Travis*, 728 P.2d 999, 1001–02 (Utah 1986); *Horgan v. Industrial Design Corp.*, 657 P.2d 751, 753 (Utah 1982). While each of the three rules is offered as the only proper method for construing releases under the statute, only the specific identity rule arguably offers a rule of construction uniquely applicable to section 78–27–42. The four corners and intent rules merely reflect general principles of contract interpretation.

### A. Specific Identity Rule

While the best evidence of legislative intent is the plain language of a statute, in cases like the present one, where statutory language is ambiguous, we avail ourselves of any relevant legislative history. *See Hansen v. Salt Lake County*, 794 P.2d 838, 841 (Utah 1990); *P.I.E. Employees Fed. Credit Union v. Bass*, 759 P.2d 1144, 1151 (Utah 1988). The history of section 78–27–42 is especially enlightening. Originally, as enacted in 1973, section 78–27–42 "by necessary implication" repealed

sections of the Joint Obligations Act, which had codified the common law rule that a release of one tortfeasor also released all other tortfeasors.[2] *See Krukiewicz v. Draper*, 725 P.2d 1349, 1350–51 (Utah 1986). In the Liability Reform Act of 1986, the Legislature shortened section 78–27–42 and created the current language as part of a bill that abolished joint and several liability in Utah. *See* 1986 Utah Laws ch. 199. The statute now reads: "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides." Utah Code Ann. § 78–27–42 (1992).

Krauss asserts that section 78–27–42 requires that all releasees be specifically named or clearly described. In essence, he would have us interpret section 78–27–42 to mean: "A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release expressly names or clearly refers to that defendant." While some courts with statutes similar to ours believe it necessary to adopt the specific identity rule in order to effect the legislative intent to abolish the harsh common law rule, *see Bjork v. Chrysler Corp.*, 702 P.2d 146, 163 (Wyo.1985), neither party provides, nor does our own research uncover, any evidence that the Utah Legislature intended such an interpretation. On the contrary, the Utah Legislature's intent is probably mirrored in the experience of the Colorado Legislature.

In *Neves v. Potter*, 769 P.2d 1047 (Colo.1989), the Colorado Supreme Court noted the basic choice confronting that state's legislature when it passed a statute worded much like section 78–27–42. The court observed:

The [Uniform Contribution Among Tortfeasors Act] does not discharge joint tortfeasors "unless [the release] terms so provide," while the [Uniform Joint Obli-

---

**2.** As enacted in 1973, section 78–27–42 read:
A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors, unless the release so provides, but reduces the claim against the other tortfeasors by the greater of: (1) The amount of the consideration paid for that release; or (2) the amount or proportion by which the release provides that the total claim shall be reduced.
1973 Utah Laws, ch. 209, § 6.

gation Act] does not release joint tortfeasors "unless [the release] terms *expressly* so provide."...  Had the General Assembly intended to require that express designation was a prerequisite to releasing a joint tortfeasor, it could have adopted a version of the UJOA rather than the UCATA.

*Id.* at 1053 (emphasis in original).  This reasoning is persuasive in view of the Utah Legislature's ability to select from the same choices available to the Colorado Legislature.  We accordingly do not read section 78–27–42 to automatically nullify a release as to a party that is not expressly named or precisely described in the release document.  If the Legislature had intended that result, it could easily have said so.[3]

### B.  Four Corners and Intent Rules

As noted above, the four corners rule and the intent rule are not rules uniquely applicable to releases under section 78–27–42, but are instead manifestations of certain principles of general contract interpretation.  Utah courts have historically analyzed releases pursuant to general contract principles.  *See Simonson v. Travis,* 728 P.2d 999 (Utah 1986); *Palmer v. Davis,* 808 P.2d 128 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991).  Whether UDOT can avail itself of the release, notwithstanding section 78–27–42, is thus a question which may be answered through the simple application of straightforward contract principles.  Those principles include precepts which underlie both the four corners and intent "rules," but neither "rule" enjoys preeminence just because the particular contract being considered is a release.

■ In order for a release to be enforceable, it "must at a minimum be unambiguous, explicit, and unequivocal."  *Simonson,* 728 P.2d at 1002.  Whether a release, like any other contract, is ambigu-

ous, is a legal determination for the court.  *Palmer,* 808 P.2d at 132.  Courts "first look to the four corners of the agreement to determine the intentions of the parties."  *Id.* (quoting *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989)).  "Language is ambiguous if the words used to express the intent of the parties are insufficient so that the contract may be understood to reach two or more plausible meanings."  *Larson v. Overland Thrift & Loan,* 818 P.2d 1316, 1319 (Utah App.1991).  Upon finding a document ambiguous, a court may utilize extrinsic evidence "to clarify the contractual intent of the parties."  *Palmer,* 808 P.2d at 132 (quoting *Fitzgerald v. Corbett,* 793 P.2d 356, 358 (Utah 1990)).  Where extrinsic evidence is insufficient to show the parties' intent, courts, as a last resort, construe ambiguous terms against the drafter.  *Simonson,* 728 P.2d at 1001; *Wilburn v. Interstate Elec.,* 748 P.2d 582, 585–86 (Utah App.1988), *cert. dismissed,* 774 P.2d 1149 (Utah 1989).

■ Viewed in the context of these principles, it is abundantly clear that the four corners and intent rules are not mutually exclusive, but instead represent different stages of contract interpretation.  In cases cited by UDOT as applying the four corners rule, courts found, in the context of particular facts, that boilerplate release language similar to that involved in the present case was unambiguous as a matter of law.  *See, e.g., Mussett v. Baker Material Handling Corp.,* 844 F.2d 760, 761–62 (10th Cir.1988) (where release included "all other persons, firms, and corporations," it was unambiguous as matter of contract law and defendant corporation was released); *Ralkey v. Minnesota Mining & Mfg. Co.,* 63 Md.App. 515, 492 A.2d 1358, 1366 (1985) (considering release "in accordance with general contract rules of construction," court agreed that language in

---

**3.**  Krauss also argues that adopting the specific identity rule would promote clarity and reduce litigation because no question would exist concerning who was actually released by an agreement.  This argument is unpersuasive.  If we adopted the specific identity rule, parties would merely argue about ambiguity at a different level of specificity.  For example, a party might specifically release ABC Corp., then attempt to sue a wholly owned subsidiary of ABC Corp. which had a similar name—perhaps "ABC of Utah."  Quite predictably, plaintiff and ABC Corp.'s subsidiary would squabble over whether ABC of Utah was sufficiently described by the term ABC Corp.

general release "was plain and unambiguous" and released joint tortfeasors; summary judgment affirmed); *Rudisill v. Lewis,* 796 S.W.2d 124, 126 (Mo.Ct.App.1990) (plain language of general release manifested intent of parties and extrinsic evidence could not be introduced to modify its meaning). On the other hand, courts purporting to apply the intent rule first look to the four corners of the agreement, conclude that the general releases before them are ambiguous, and proceed to assess the intent of the parties through the use of extrinsic evidence. *See, e.g., Neves v. Potter,* 769 P.2d 1047, 1055–56 (Colo.1989) (after reviewing release, a genuine issue existed as to whether plaintiff intended to release defendants); *Sellon v. General Motors Corp.,* 521 F.Supp. 978, 984–86 (D.Del. 1981) (where issue of interpretation could not be resolved on sole basis of general release language, court examined extrinsic evidence to determine intent). Insofar as the parties to this appeal purport that two distinct rules exist, they ignore the fact that both rules are attempts to discover the intent of the parties to a release. Accordingly, we need not choose between the two rules, but rather apply each, in turn, in the course of routine contract interpretation. If the release is unambiguous, it is construed as a matter of law within its four corners; if it is ambiguous, extrinsic evidence is appropriately considered to glean the intent of the parties to the release.

## INTENT OF PARTIES REGARDING UDOT

### A. Release's Facial Ambiguity

▮▮▮▮ Our task in the instant case is to determine whether UDOT, in light of the fact that it was not a party to the release and provided no consideration for the release, was, in effect, a third party beneficiary of the release agreement. "In Utah, '[a]s a general rule, the rights of third-party beneficiaries are determined by the intentions of the parties to the subject contract.'" *Palmer v. Davis,* 808 P.2d 128, 131 (Utah App.1991) (quoting *Hansen v. Green River Group,* 748 P.2d 1102, 1104 (Utah App.1988)).

Applying the principles outlined above, our first task is to assess whether the language of the release unambiguously demonstrates the contracting parties' intent to confer a benefit on UDOT, thereby releasing it from any potential liability. The document in question reads, with our emphasis, as follows:

FOR AND IN CONSIDERATION OF the payment to me/us of the sum of ($200,000) Two hundred thousand and no/100 Dollars, and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge Penny Urguhart, Ray Leigh, Harold Krauss, Matthias Krauss, Reinhilde Krauss, Nationwide Mutual Fire Insurance Company and Farmers Insurance Exchange *and any and all other persons, firms and corporations, whether herein named or referred to or not,* of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity, of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death and/or property damage resulting or to result from an accident that occurred on or about the 3rd day of May 1986, at or near I–15 between Salwia [sic] & Richfield, Utah.

The emphasized language, which lies at the heart of this dispute, is ambiguous because one can only guess, upon a simple reading of the text, whether governmental entities, such as UDOT, come within the contract's term, "persons, firms and corporations."

UDOT argues that the phrase "all other persons, firms and corporations" clearly and unambiguously encompasses government entities. Essentially, UDOT claims that it falls within the description of "persons" for purposes of the release because a

provision of the Utah Governmental Immunity Act, Utah Code Ann. § 63–30–4(1)(b) (Supp.1992), provides: "If immunity from suit is waived by this chapter, consent to be sued is granted, and liability of the entity shall be determined as if the [government] entity were a private person." UDOT would have us believe that merely because UDOT is liable to the extent that a person would be when its sovereign immunity is statutorily waived, the term "persons" must embody government entities when used in contract parlance. UDOT, however, provides no case law or elaboration to remedy the flawed logic inherent in its proposition. We are not trying to determine the nature and limit of liability per section 63–30–4(1)(b), and we perceive no indication that this statute provides clear meaning to the term "persons" as it is used in all legal contexts. Therefore, section 63–30–4(1)(b) does not serve to demonstrate the clear unambiguous intent of the parties to the agreement in using the term "persons" in an unrelated context.[4]

■ While UDOT emphasizes that Krauss had the benefit of counsel in considering the release, we can readily envision Krauss and his counsel reading the release, carefully studying the language, noting the absence of the category of defendant they had in mind to sue, and signing the agreement, fully expecting to sue UDOT because as a government agency it was not included in the release language. This is not to say that counsel would not have been more prudent to bring the release language to the insurance carrier's attention in order to explicitly reserve Krauss's right to sue UDOT. Our task, however, is not to determine whether Krauss proceeded by the safest course, but is instead to determine whether the parties to the release contract, in employing the words used, intended UDOT to be released.

Because UDOT does not clearly and unequivocally fall either within or without the ambit of the phrase "other persons, firms and corporations," we hold the release "may be understood to reach two or more plausible meanings" and is thus ambiguous in expressing the contracting parties' intent with respect to whether UDOT—or at least a category of potential defendants which includes UDOT—was released. *Larson v. Overland Thrift & Loan,* 818 P.2d 1316, 1319 (Utah App.1991).

### B. Extrinsic Evidence of Intent

■ Since the release language is ambiguous, the trial court correctly denied UDOT's pretrial motion for summary judgment and, at trial, properly admitted extrinsic evidence in order that the jury could make the factual determination of what the contracting parties intended with the release. *See Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985); *Wilburn v. Interstate Elec.,* 748 P.2d 582, 585 (Utah App. 1988), *cert. dismissed,* 774 P.2d 1149 (Utah 1989). Krauss's claim that the trial court erred in denying his motions for a directed verdict and judgment notwithstanding the verdict is essentially a claim that the evidence was insufficient to support the jury verdict that the contracting parties intended to discharge UDOT from liability. *See Cerritos Trucking Co. v. Utah Venture No. 1,* 645 P.2d 608, 611 (Utah 1982). We must view the evidence supporting the verdict and all fair, reasonable inferences therefrom in a light most favorable to the jury verdict. *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 784 P.2d 475, 481 (Utah App.1989). In order to succeed, Krauss must marshall any and all evidence supporting the verdict and demonstrate that, even when viewed in the most favorable light, the evidence does not support the verdict. *Von Hake v. Thomas,* 705 P.2d 766, 769 (Utah 1985). This court will not reverse a jury verdict on the basis of

**4.** UDOT also suggests that we should construe the term "person" in its broadest legal sense. Thus, the term person should be construed to mean any legally cognizable entity. However, if the parties to the release intended to give the term that meaning, the additional words "firm" and "corporation" would be entirely superflu- ous, because they, too, are encompassed in the broadest legal sense of "person." Since the drafter specifically named both firms and corporations after the term "persons," the drafter must have used "persons" in a more limited sense than is urged by UDOT.

insufficient evidence "unless the evidence clearly preponderates for the appellant to the extent that reasonable people could not differ on the outcome of the case." *White v. Fox,* 665 P.2d 1297, 1301 (Utah 1983) (quoting *Time Commercial Fin. Corp. v. Davis,* 657 P.2d 234, 236 (Utah 1982)).

■ In contemplation of the marshaling requirement, Krauss submits that there is no evidence he can point to that supports the jury's verdict. Krauss asserts that the *only* evidence presented to the jury with respect to the contracting parties' intent was his own testimony that he did not intend to release UDOT. Considering the jury's verdict—that Krauss released UDOT—we must assume that it chose not to believe his testimony. A jury could no more have inferred from Krauss's testimony that the contracting parties intended to release UDOT, than it could have made that inference if Krauss had taken the stand, given his name, and stepped down. The jury could, at most, have given Krauss's testimony no weight, wholly disregarding his testimony. It could not, by any rational process, have concluded that his testimony was evidence the parties intended to release UDOT from liability. We therefore agree with Krauss that neither his own testimony nor any inference properly drawn therefrom would support the jury verdict.

Krauss further maintains that the affidavit of Robert Snow, a claims adjuster, who acted on behalf of the driver's and owners' insurers, conclusively validated his claim that none of the parties to the release intended UDOT as a beneficiary of the release. In his affidavit, Mr. Snow stated that "our intent was to only have our insureds and our companies released. It was not the intent to have anyone else released, such as the State of Utah." Krauss submitted the affidavit to the court with his memorandum in opposition to UDOT's motion for summary judgment. Mr. Snow, however, never testified at trial, nor was his affidavit offered into evidence. Consequently, the Snow affidavit cannot be considered in assessing whether the jury's verdict is sustainable.

No other evidence, either directly or through inference, supports the jury's verdict that Krauss released UDOT from liability. UDOT makes much of the fact that Krauss signed the release after consulting with his attorney and claims that the language made it clear to counsel that UDOT would be discharged by the general language of the release. As noted in our prior discussion concerning the document's ambiguity, the mere fact that counsel reviewed the release is entirely neutral. Krauss's attorney might well have conducted a careful inspection of the language and concluded that since the term "governmental entity" was absent from an otherwise carefully worded document, UDOT would continue to be susceptible to suit. The fact that Krauss signed a release with advise of counsel provides no evidence and creates no inference that Krauss intended to release UDOT from liability for his injuries.

Neither UDOT nor Krauss directs our attention to any other evidence presented at trial which supports or undermines the jury's verdict. While UDOT admits the evidence supporting the jury's determination "was not voluminous," it may more accurately be described as nonexistent. Without a scintilla of evidence to demonstrate any intent to release UDOT, "reasonable people could not differ on the outcome of the case" and we must conclude that there was insufficient evidence to support the jury's verdict. *Id. Cf. Simonson v. Travis,* 728 P.2d 999, 1001–02 (Utah 1986) (where release was ambiguous and defendant's agent's testimony "did nothing to clarify the ambiguity," trial court incorrectly dismissed plaintiff's claim).

### C. Tie-breaker

■ Since no evidence suggests the parties to the release intended to release UDOT, and since the jury apparently discredited Krauss's testimony that he did not intend to release UDOT, the parties to the instant action stand in something of a tie with respect to their competing positions as to what the parties to the release intended. Simply put, no relevant evidence credited

by the jury clarifies the ambiguity one way or the other. Recourse must therefore be had to other established legal doctrines to properly resolve this appeal.

 First, under well established contract interpretation principles, if a court after considering all extrinsic evidence "is still uncertain as to the intention of the parties[,] ... ambiguities should be construed against the drafter." *Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 (Utah App.1988), *cert. dismissed*, 774 P.2d 1149 (Utah 1989). While UDOT did not draft the verbiage in question, it wishes to stand in the same position as the party that did. It would be unfair to hold that a party, such as UDOT, which paid no consideration for benefits under a contract, could stand in the place of the drafter to avail itself of the agreement's *benefits*, but could escape any adverse consequences inherent in such a capacity. Thus, ambiguous terms in the release "are construed against the party employing them," *Simonson*, 728 P.2d at 1001, in this case, UDOT.

 Second, when a party not specifically named in a release attempts to avail itself of the release, that party bears the burden of proving it is an intended beneficiary of the release. *See McCullough v. Bethany Medical Center*, 235 Kan. 732, 683 P.2d 1258, 1263–64 (1984). Such a rule comports with the principle that the party asserting a fact as true bears the burden of proving that fact. Here, UDOT asserts as part of its defense that by using particular words, the contracting parties intended to release it of all liability, but, as explained above, UDOT has shown us absolutely no evidence to support that assertion. It has not met its burden of proving that the ambiguous phrase "any and all other persons, firms and corporations" was intended by the parties to encompass governmental entities.

## CONCLUSION

The release agreement is ambiguous with respect to the contracting parties' intent to release UDOT from liability. Because no evidence supported the jury's conclusion that the parties intended to release

UDOT, we reverse the jury verdict, construe the contract against UDOT, and conclude Krauss did not release UDOT from liability. Accordingly, we remand for a new trial.

GARFF and GREENWOOD, JJ., concur.